INDEMNITY INS. CO. OF NORTH AMERICA v. CAMPBELL et al. (No. 1865.)

Court of Civil Appeals of Texas. Beaumont. July 2, 1929.

Rehearing Denied July 17, 1929.

Barnes & Barnes, of Beaumont, for appellant.

Howell & Howell, of Beaumont, for appellees.

WALKER, J. This is a workmen's compensation case. In the district court, judgment was in appellee's favor for permanent total incapacity. The finding of the jury that appellee's injuries resulted in "permanent total incapacity" was so against the weight and preponderance of the evidence as to be clearly wrong. This finding is entirely without support in the record. According to appellee's testimony, he was injured in June, 1926. From that date until this case was tried in November, 1928, he continued doing the same class of work he was doing at and before his alleged injuries. For his labor he was paid the same compensation paid other employees engaged in similar service. His work was satisfactory to his superiors, and in doing his work he was favored neither by his superiors nor by his fellow servants, but performed his tasks as if he had never been injured. The following excerpt from the testimony of the paymaster shows the number of days worked by appellee subsequent to his injury:

"My name is Chas. E. Paxton; I am paymaster of the Gulf Refining Co. As paymaster I have charge of the rolls that show when a man works and when he is off. In May, 1926, Willie Campbell worked 24 days and lost three; in June worked 25 days, lost one; in July worked 22 days; in August 26; in September 23, with vacation included of 12 days; in October 24; in November 22; in December 22. In October, 1928, he worked 25 days; in September, 1928, he worked 22 days, including vacation; in August, 1928, he worked 24 days; in January, 1928, he worked 23 days; February 23; March 25; April 19; May 25; June 18; July 24. In January, 1927, he worked 22 days; February 18; March 19; April 10 days; May 21; June 21; July 17; August 15; September 18; October 19; November 6; December 24. In June, 1926, Willie Campbell's wages were 45 cents per hour, 8 hours a day, or $3.60 per day, working six days a week. His wages ever since that time have been the same, and he is now getting the same wages."

"The days worked are enumerated on these records only from September, 1926, on. I don't know from these records the exact days he worked in June, 1926. I have the number of days he worked in June, 1926. The data I have with reference to April, May, June, July and August, are a recapitulation sheet, which is made from the records. The record shows he did not work October 28, 1926, nor October 29th, 30th, 31st, November 1st, 2nd, 3rd, or 4th, but he did work November 5. He lost 7 days on a stretch up until the 27th, inclusive—it would have been 8 days but there was a Sunday in there. I testified he worked 6 days a week. The first six months of the year we pay our employees on the 6th working day after the last of the month and the 15th. There were 31 working days in October if he worked 7 days a week; but there were 4 Sundays in that month. He lost 7 days all told in October, and lost 8 days in November, 9 days in December and 8 days in January, 1927. My answers to these questions include Sundays. He lost 10 days in February. He lost 12 days in March, 20 days in April, 10 days in May, 9 days in June, 14 days in July, 16 days in August; 12 days in September; 12 days in October; 24 days in November; and 8 days in December."

Appellee was a negro. Testifying as to the average number of days lost by the workmen in his department, Mr. Paxton, the paymaster, said: "In the construction department, in which most of these negroes work, it's nothing unusual to lose four or five days a month." Comparing the number of days actually worked by appellee immediately after his alleged injury, it is seen that he was a punctual, efficient servant.

The doctor, placed by him upon the stand, testified to an incapacity of not more than 10 per cent., which he related to the shoulder. It is true that appellee and his wife testified to his suffering when the day's work was over and to his loss of sleep and to his inability to do the usual work required of a servant in his employment. But the admitted facts impeached appellee's testimony on this issue. Admittedly he was always able to report for work, or at least he did report for work, and actually performed the duties of his employment on the days shown by the paymaster's report. Where a laborer is able to procure and retain employment, as was appellee, on the undisputed testimony, the law cannot sustain a jury's verdict of permanent total incapacity.

Appellant also asserts that the finding that appellee was injured at all in 1926 was without support. As the case must be reversed upon the grounds already stated, we do not pass upon the merits of this proposition. On authority of Lumbermen's Reciprocal Association v. Wilmoth (Tex. Com. App.) 12 S.W.(2d) 972, the issue, "Did such injuries, if any, result in permanent total incapacity?" was duplicitous and constituted reversible error.

Appellee's cross-action was not subject to the exceptions that he failed to allege properly the venue of his cause of action and that his injuries "arose out of or was incident to his employment." The pleading was sufficiently full on these issues.

It is not necessary to discuss appellant's

proposition that appellee failed to prove venue; that is, that his injuries occurred in Jefferson county. If the testimony is subject to this exception, appellee can meet it on another trial. Also, if the evidence does not show that he made claim for his compensation within the six-month period, as required by article 8307, § 4a, Rev. St. 1925, that issue can be met on another trial. In connection with that issue, it should be said that appellee pleaded "good cause" for not making his claim within the six-month period, provided it was not so made, and we think the evidence raised that issue.

Appellant's fifth proposition is as follows: "In a suit for compensation insurance by an employee when the proof shows conclusively that said employee has suffered no reduced wage earning capacity, and that he has, since the date of his injuries, continued to earn as much as prior to said date, then appellant was entitled to have its Motion for an Instructed Verdict sustained."

In support of this proposition, appellant cites Lumbermen's Reciprocal Association v. Coody (Tex. Civ. App.) 278 S. W. 856. Without attempting, at this time, to anticipate appellee's testimony upon another trial, we say that the case cited is a proper construction of the Workmen's Compensation Law, and should guide the trial court on another trial in determining the legal effect of the testimony on this issue.

Appellant has assigned many errors against the admission and exclusion of testimony. As presented, we are not able to dispose of these assignments in a way to aid the trial court very much upon another trial. It is sufficient to say that appellant pleaded a former injury of 1923 as the proximate cause of all the suffering complained of by appellee upon this trial. All evidence pertinent to this issue should be received. Upon this issue appellee was subject to impeachment, as upon any other material issue in the case. However, the trial court did not err in excluding such questions as the following, asked appellee by appellant: "Do you think the doctors, when they say you were suffering a 10 per cent. disability, exaggerated?" "If you hadn't a broken arm and a broken collar bone and a dislocated collar bone and injured back and crushed chest you would not have been hurt, would you?" "And if you hadn't been hurt before, you probably wouldn't have been hurt this time?" There is nothing in the record to show that appellee was qualified to answer these questions, and had he answered them the answers would have been without probative force but probably prejudicial to his case. The questions quoted and all similar questions were properly excluded. The following question by appellant was also properly excluded: "Doctor, does your experience in working there with injured patients from time to time —is it your experience when they come to you for treatment that they tell you when and how they have received the injury?" An answer to this question would be immaterial and irrelevant to any issue before the jury. What other injured employees may have said to Dr. Orrill, to whom this question was propounded, was not binding upon appellee nor of probative weight against him.

The court's definition of "permanent total incapacity" was in language many times approved by the courts and as presented in the transcript was identical with the charge on this issue given in United States Fidelity & Guaranty Co. v. Weir (Tex. Civ. App.) 286 S. W. 565. This definition from the Weir Case has been brought forward by the Third Edition of Words and Phrases, vol. 5, p. 962. For other cases approving this charge, see Home Life & Accident Co. v. Corsey (Tex. Civ. App.) 216 S. W. 464; Lumbermen's Reciprocal Association v. Wells (Tex. Civ. App.) 283 S. W. 208; Georgia Casualty Co. v. Ginn (Tex. Civ. App.) 272 S. W. 601; Employers' Liability Assur. Corp. v. Williams (Tex. Civ. App.) 293 S. W. 210; Texas Employers' Ins. Association v. Heuer (Tex. Civ. App.) 10 S. W. (2d) 756.

There is no merit in appellee's motion to strike the statement of facts. The statement of facts was duly filed, as provided by law, and its preparation was not in violation of any statute or rule of court. The appellee complains of the statement of facts on the ground that it contains certain questions and answers. This objection is irrelevant and immaterial. The questions and answers embodied in the statement of facts are only in explanation of certain bills of exception, and form no part of the statement of facts proper.

For the reasons given, the judgment of the trial court is reversed, and the cause remanded to the lower court.