Sheree HOLLANDSWORTH *v.* Keith KNYZEWSKI

02-720                                        109 S.W.3d 653

Supreme Court of Arkansas
Opinion delivered June 5, 2003

472

*Andy E. Adams*, for appellant.

*Taylor Law Firm*, by: *Scott Smith* and *Chris D. Mitchell*, for appellee.

W H. "DUB" ARNOLD, Chief Justice. Appellant, Sheree Hollandsworth, appeals the Benton County Chancery Court's order changing primary custody and awarding same to appellee, Keith Knyzewski, of their two children and denying appellant's request to relocate out of state with the children while she was the primary custodial parent. We reverse and remand.

The facts in this case are not in dispute. Appellant and appellee were married on or about September 2, 1995, and lived together as wife and husband until on or about June 9, 2000, at which time they separated. Appellant and appellee are the parents of two minor children, Ethan Edward Knyzewski, born February 3, 1996, and Katherine Christine Knyzewski, born February 17, 1998. Appellant and appellee were divorced in October of 2000. According to the divorce decree, appellant was awarded primary custody of the parties' two children, subject to visitation by appellee. The divorce decree went on to find that appellant and appellee were each entitled to one-half of the children's free time,

which the trial court set out as being weekends, holidays, and summer vacations. The trial court further set out a schedule of visitation if the parties could not otherwise agree. The parties thereafter negotiated a more liberal visitation schedule that allowed appellee to be with the children three and one-half days per week until the eldest child began kindergarten.

On December 31, 2000, appellant married Mr. Brian Hollandsworth, who is a corporal in the United States Army. Hollandsworth is stationed at Fort Campbell, Kentucky, and makes his home in Clarksville, Tennessee. In early January of 2001, appellant informed appellee that she would be moving to Tennessee to be with her husband and intended to take the children with her. On January 23, 2001, appellant found out that she was pregnant, and that the baby was due in October of 2001.

On January 11, 2001, appellee filed a petition for modification requesting that the children not be allowed to move with appellant to Tennessee, and further requesting that he be awarded primary custody of the children. Appellee argued to the trial court that there had been a material and substantial change in circumstance warranting modification of the trial court's decree. Appellee maintained that appellant had remarried and announced that she intended to relocate with the parties' minor children to Clarksville, Tennessee, thereby preventing appellee's visitation schedule with the children and separating the attachments the minor children have established in Northwest Arkansas with both sets of grandparents.

Appellant also filed a petition for modification of visitation and permission to relocate. She argued to the trial court that the material change in circumstance warranting the modification was that she had remarried and that it would be in the best interest of the children to live in a two-parent environment and that the two children would have the opportunity to form a relationship with their soon-to-be half-sibling. Appellant further requested that the parties alternate visitation every two weeks with a specific halfway location to transfer the children until the children were enrolled in school; and, after school-age, the visitation would follow the trial court's visitation schedule for holidays and an extended summer visitation for appellee, to offset the normal weekend visitations.

· The trial court held a hearing on the petitions on April 26, 2001, and entered an order changing custody of the parties' minor children to appellee on May 21, 2001. The trial court found, citing *Hickmon v. Hickmon*, 70 Ark. App. 438, 19 S.W.3d 624 (2000), that appellant Hollandsworth, as the then-custodial parent of the minor children, had the burden to show a real advantage to herself and to the children for the proposed move from Northwest Arkansas to Clarksville, Tennessee. The trial court concluded that appellant failed to meet the burden and applied the *Staab v. Hurst*, 44 Ark. App. 128, 868 S.W.2d 517 (1994), criteria to analyze whether she should be allowed to move with the children.

The trial court found that neither appellant nor appellee had improper motives for requesting a change in custody and that appellant would comply with any substitute visitation orders. The trial court ruled that it was not in the best interest of the children to move to Tennessee, because of the disruption of the relationship between the children and appellee and the strong family ties the children had formed in Northwest Arkansas. Therefore, the trial court granted primary custody to appellee and set a visitation schedule for appellant. The trial court further noted that the court, in *Hickmon*, did not find the situation of a new husband/stepfather who provided a great deal of stability and income for the child, to be enough, in and of itself, to warrant relocation. The trial court in *Hickmon* denied the move of the children to Arizona stating that "there was not a way to substitute the long distance visitation for what the children had been used to with their father, and I find that those are probably the overriding concerns here."

Appellant Hollandsworth filed a notice of appeal on June 13, 2002, to the Arkansas Court of Appeals. In a 5-4 decision, the court of appeals reversed the trial court's ruling. *Hollandsworth v. Knyzewski*, 78 Ark. App. 190, 79 S.W.3d 856 (2002) (*Hollandsworth I*). The majority applied the *Staab* criteria and concluded that the trial court clearly erred in denying the petition for relocation and changing the primary custody to appellee. *Id*. The majority further found that having a stay-at-home mother in a two-parent home was a distinct advantage to the children, and that appellant's motives for the move to Tennessee were pure and that she would abide with any substituted visitation orders. *Id*.

■ Appellee petitioned this court for review from the court of appeals decision, and we granted appellee's petition. When this court grants a petition for review of a decision by the court of appeals, this court reviews the appeal as if it had been originally filed in this court. *Lewellyn v. Lewellyn*, 351 Ark. 346, 93 S.W.3d 681 (2002). Appellant Hollandsworth's point on appeal is whether the trial court erred in vesting custody of the parties' minor children in appellee Kyzewski, when appellant desired to relocate with the children to Tennessee.

■ This court has traditionally reviewed matters that sounded in equity *de novo* on the record with respect to fact questions and legal questions. *Con-Agra, Inc. v. Tyson Foods, Inc.*, 342 Ark. 672, 30 S.W.3d 725 (2000); *Ferguson v. Green*, 266 Ark. 556, 587 S.W.2d 18 (1979). We have stated repeatedly that we would not reverse a finding by a trial court in an equity case unless it was clearly erroneous. *Con-Agra, Inc. v. Tyson Foods, Inc., supra.* We have further stated that a finding of fact by a trial court sitting in an equity case is clearly erroneous when, despite supporting evidence in the record, the appellate court viewing all of the evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* These common-law principles continue to pertain after the adoption of Amendment 80 to the Arkansas Constitution, which became effective July 1, 2001. *Id.*

In this case, the trial court found appellant's relocation to be a material change in circumstance and applied a "real advantage" test, purportedly basing its decision using the law set forth in *Hickmon v. Hickmon*, 70 Ark. App. 428, 19 S.W.2d 624 (2000), and the factors applied therein, and more recently applied in the case of *Wagner v. Wagner*, 74 Ark. App. 135, 45 S.W.3d 852 (2001), which are: (1) the prospective advantages of the move in terms of its likely capacity for improving the general quality of life for both the custodial parent and the children; (2) the integrity of the motives of the custodial parent in seeking the move in order to determine whether the removal is inspired primarily by the desire to defeat or frustrate visitation by the noncustodial parent; (3) whether the custodial parent is likely to comply with substituted visitation orders; (4) the integrity of the noncustodial parent's motives in resisting the removal; and (5) whether, if removal is allowed, there will be a realistic opportunity for visitation in lieu of the weekly pattern, which can provide an adequate basis for

preserving and fostering the parent relationship with the noncustodial parent. *Wagner, supra; Hickmon, supra.*

■ Appellant asserts that the trial court erred. We agree and hold that relocation of a primary custodian and his or her children alone is not a material change in circumstance. We announce a presumption in favor of relocation for custodial parents with primary custody. The noncustodial parent should have the burden to rebut the relocation presumption. The custodial parent no longer has the responsibility to prove a real advantage to herself or himself and to the children in relocating.

Courts throughout the country have been grappling with the issue of relocation. This court visits the issue of relocation not only to resolve the case before us, but because of what we ascertain as confusion among the bench, bar, and parties. In an ideal setting, parents would never get divorced, and children would live in a caring, two-parent household. However, we are not fortunate enough to live in such a world. Divorce, without exception, transforms the relationship between the divorced parents, as well as between the parents and their children. *See Cooper v. Cooper*, 99 N.J. 42, 491 A.2d 606 (1984). Within four years of a divorce, one-fourth of all custodial mothers will move to a new location, and one out of every five Americans change residences each year. *Baures v. Lewis*, 167 N.J. 91, 770 A.2d 214 (2001)(citing Chris Ford, *Untying the Relocation Knot: Recent Development and a Model for Change*, 7 Colum. J. Gender & L. 1, 7 (1997)). When the noncustodial parent objects to the custodial parent's relocation, a conflict inevitably emerges between the custodial parent, who has the right to travel and to relocate and desires to take the children with him or her, and the noncustodial parent, who wishes to maintain a close relationship with the children and has misgivings that that bond will be lost. *Cooper, supra.*

Accordingly, it is crucial that courts look to the facts of each case to assess which interests should be given the most weight. *Cooper, supra.* As the New Jersey Supreme Court points out:

> In weighing the factors, however, the court should be mindful that after the divorce a noncustodial parent is free to remove himself or herself from this state to seek a better or different lifestyle despite the continued residency here of the children. If a noncustodial parent chooses to leave this state, or to alter his or her

> personal life style, the custodial parent cannot prevent his or her departure or change in life style even though it may severely disrupt the child's relationship with that parent.

Cooper, 99 N.J at 54, 491 A.2d at 613. The custodial parent who bears the burden and responsibility for the child is entitled to seek a better life for herself or himself and the children, as enjoyed by the noncustodial parent. *See D'Onofrio v. D'Onofrio*, 144 N.J.Super. 200, 365 A.2d 27 (1976). "The custodial parent's freedom to move is qualified, however, by the special obligation of custody, by the state's interest in protecting the best interests of the child, and by the competing interest of the noncustodial parent." *Cooper*, 99 N.J. at 56, 491 A.2d at 613. "Recently, however, many courts have reassessed the burden cast on custodial parents who desire to relocate with their children. Reasons for the change include the geographic mobility of the United States population and post-divorce demands." *Baures*, 167 N.J. at 105, 770 A.2d at 222.

As our society has become more and more mobile, some courts around the country have imposed a presumption against relocation, while others have imposed a presumption in favor of relocation, and still others have simply applied a best-interest analysis. Ann M. Haralambie, *Handling Child Custody, Abuse and Adoption Cases* § 7.08 (2001); *Baures, supra*. Some states that have traditionally been virulent to custodial-parent relocation have recently adjusted their criteria to make custodial-parent relocation more lenient.

Minnesota courts have held that the noncustodial parent has the burden of showing the move will endanger the child or is meant to frustrate the noncustodial parent's relationship with the child. *Sefkow v. Sefkow*, 427 N.W.2d 203, 214 (Minn. 1998). In *Auge v. Auge*, 334 N.W.2d 393, 399 (Minn. 1983), the Minnesota Supreme Court held that the custodial parent is presumptively entitled to relocate. Tennessee courts, likewise, have created a strong presumption in favor of the custodial parent. *Taylor v. Taylor*, 849 S.W.2d 319 (Tenn. 1993).

In *Tropea v. Tropea*, the New York Court of Appeals held:

> Rather, we hold that, in all cases, the courts should be free to consider and give appropriate weight to all of the factors that may

be relevant to the determination. These factors include, but are certainly not limited to each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements. In the end, it is for the court to determine, based on all of the proof, whether it has been established by a preponderance of the evidence that a proposed relocation would serve the child's best interests.

87 N.Y.2d 727, 740-42, 665 N.E.2d 145, 151-52, 642 N.Y.S.2d 575, 581 (1996).

Furthermore, in *In re Marriage of Burgess,* 13 Cal.4th 25, 913 P.2d 73, 51 Cal. Rptr.2d 444 (1996), the California Supreme Court departed from the previous hostile method taken toward the custodial parent in relocation cases, and rejected the harsh standard that compelled a custodial parent to show a "necessity" for the relocation. The California Supreme Court stated, "the custodial parent seeking to relocate, like the noncustodial parent doing the same, bears no burden of demonstrating that the move is 'necessary.'" *In re Marriage of Burgess*, 13 Cal.4th at 36. The California court went on to hold the following:

The 'necessity' of relocating frequently has little, if any, substantive bearing on the suitability of a parent to retain the role of a custodial parent. A parent who has been the primary caretaker for minor children is ordinarily no less capable of maintaining the responsibilities and obligations of parenting simply by virtue of a reasonable decision to change his or her geographical location.

*Id.* Instead of the "necessity test," the *Burgess* court instructed California lower courts to assess the custodial parent's "presumptive right" to relocate.

Following suit, the Colorado Supreme Court reversed its requirement for the custodial parent to prove the necessity of the move and stated:

We find that the child's best interest are served by preserving the custodial relationship, by avoiding relitigation of custody deci-

> sions, and by recognizing the close link between the best interests of the custodial parent and the best interest of the child. In a removal dispute, this leads logically to a presumption that the custodial parent's choice to move with the children should generally be allowed.

*In re Marriage of Francis*, 919 P.2d 776, 784 (Colo. 1996).

Texas courts have held that relocation, regardless of distance, will not suffice to establish a material and substantial change in circumstances. *Bates v. Tesar*, 81 S.W.3d 411 (Tex. App. El Paso 2002). North Carolina courts have also held that the mere fact that either parent changes his or her residence is not a substantial change of circumstance, and the effect of the change on the welfare of the child must be shown in order for a court to modify a custody decree based on change of circumstances. *Gordon v. Gordon*, 46 N.C. App. 495, 265 S.E.2d 425 (1980). Further, North Carolina has also found that the a mother's remarriage and her relocation to Texas was not a substantial change in circumstance that required modification of a child–custody order, where the child continued to reside with the mother, and the parties continued to comply with the same visitation schedule. *See Dobos v. Dobos*, 111 N.C.App. 222, 431 S.E.2d 861 (1993).

In *Ramirez-Barker v. Barker*, 107 N.C. App. 71, 418 S.E.2d 675 (1992), the North Carolina Court of Appeals found that in exercising its discretion in determining the best interest of the child in a case involving proposed relocation of the custodial parent, factors appropriately considered by trial court include: advantages of relocation in terms of its capacity to improve the life of the child; motives of the custodial parent in seeking to move; likelihood that the custodial parent will comply with visitation orders when he or she is no longer subject to jurisdiction of state courts; integrity of the noncustodial parent in resisting relocation; and, likelihood that a realistic visitation schedule can be arranged, that will preserve and foster the parental relationship with the noncustodial parent. *Ramirez-Barker v. Barker, supra.*

The Supreme Court of Wyoming adopted a test similar to that of Illinois and stated:

> It would be incongruous for a court, when presented with a custodial order originally based upon the best interests of the child, to refuse to support the efforts of the custodial parent to maintain

and enhance their standard of living, albeit in another jurisdiction. So long as the court is satisfied with the motives of the custodial parent in seeking the move and reasonable visitation is available to the remaining parent, removal should be granted.

*Love v. Love*, 851 P.2d 1283 (Wyo. 1993)(citing *Arguilla v. Arguilla*, 85 Ill. App. 3d 1090, 407 N.E.2d 948 (1980)).

The New Jersey Supreme Court has also struggled with the issue of relocation and stated that the current trend among jurisdictions is to recognize the geographic mobility of Americans and ease the burden on custodial parents in relocation cases. *Baures v. Lewis, supra.* After reviewing the social science research and literature, the New Jersey Supreme Court concluded that, "[s]ocial science research has uniformly confirmed that the simple principle that, in general, what is good for the custodial parent is good for the child." *Baures*, 167 N.J. 106. "Most importantly, social science research links a positive outcome for children of divorce with the welfare of the primary custodian and the stability and happiness within that newly formed post-divorce household." *Id.* (Relying on Judith S. Wallerstein, & Tony J. Tanke, *To Move or Not to Move: Psychological and Legal Considerations in the Relocation of Children Following Divorce*, 30 Fam. L.Q. 305, 311-12 (1996).

In *Cooper v. Cooper, supra*, the Supreme Court of New Jersey held that the primary custodial parent must show that there is some "real advantage" to that parent in the move and that the move is not contrary to the best interests of the children. After the custodial parent has established this threshold requirement, the New Jersey Supreme Court set forth factors to ascertain whether the custodial parent has sufficient cause to relocate. *Id.* The court found:

> The first factor to be considered is the *prospective advantages of the move* in terms of its likely capacity for either maintaining or improving the general quality of life of both the custodial parent and the children. The second factor is the *integrity of both the custodial parent's motives in seeking to move* and the noncustodial parent's motives in seeking to restrain such a move (*e.g.*, whether the custodial parent is motivated by a desire to defeat and frustrate the noncustodial parent's visitation rights and remove himself or herself from future visitation orders or whether the noncustodial parent is contesting the move mainly to impede the custodial parent's plans or to secure a financial advantage with respect to future support payments). And the third factor is whether, under

the facts of the individual case, *a realistic and reasonable visitation schedule can be reached if the move* is allowed. In a given case, evidence of any of these factors may be used to militate against either the threshold showing of the custodial parent for removal, or the arguments of the noncustodial parent against removal.

*Cooper*, 99 N.J. 42, 56-57(emphasis added). That court further held:

> Since the noncustodial parent has the necessary information to demonstrate that an alternative visitation schedule is not feasible because of distance, time, or financial restraints, *we place the burden on that parent to come forward with evidence that a proposed alternative visitation schedule would be impossible or so burdensome as to affect unreasonably and adversely his or her right to preserve his or her relationship with the child.* We emphasize that more than a showing of inconvenience by the noncustodial parent is required to overcome a custodial parent's right to remove the children after he or she has met the threshold showing that the move would be a real advantage to him or her and would not be inimical to the best interests of the children. If, however, the noncustodial parent does present evidence that his or her relationship and visitation with the children would be adversely affected by the move, then the trial court must balance the competing interests of the parties.

*Cooper*, 99 N.J. 42, 57-58 (emphasis added). In *Cooper*, the New Jersey Supreme Court noted that the "advantages of the move should not be sacrificed solely to maintain the 'same' visitation schedule where a reasonable alternative visitation scheme is available and the advantages of the move are substantial." *Id.; Baures v. Lewis*, 167 N.J. 91, 111, 770 A.2d 214, 226.

Fours years after *Cooper*, the New Jersey Supreme Court revisited the issue of removal, and held that a custodial parent need not establish a "real advantage," and that "any sincere, good-faith reason will suffice." *Holder v. Polanski*, 111 N.J. 344, 352-53, 544 A.2d 852 (1988).

The New Jersey Supreme Court concluded:

> Motives are relevant, but if the custodial parent is acting in good faith, and not to frustrate the noncustodial parent's visitation rights, that should suffice. Maintenance of a reasonable visitation schedule by the noncustodial parent remains a critical concern, but in our mobile society, it may be possible to honor that sched-

ule and still recognize the right of a custodial parent to move. In resolving the tension between a custodial parent's right to move and a noncustodial parent's visitation rights, the beacon remains the best interest of the children.

*Holder,* 111 N.J. at 353-54. Under *Holder,* "it is not any effect on visitation, *but an adverse effect that is pivotal." Id.* (Emphasis added.)

In *Baures v. Lewis, supra,* the New Jersey Supreme Court established the following factors pertinent to the custodial parent's burden of proving good faith and that the removal would not be contrary to the child's best interest:

> With those principles in mind, in assessing whether to order removal, the court should look to the following factors relevant to the plaintiff's burden of proving good faith and that the move will not be inimical to the child's interest: (1) the reasons given for the move; (2) the reasons given for the opposition; (3) the past history of dealings between the parties insofar as it bears on the reasons advanced by both parties for supporting and opposing the move; (4) whether the child will receive educational, health and leisure opportunities at least equal to what is available here; (5) any special needs or talents of the child that require accommodation and whether such accommodation or its equivalent is available in the new location; (6) whether a visitation and communication schedule can be developed that will allow the noncustodial parent to maintain a full and continuous relationship with the child; (7) the likelihood that the custodial parent will continue to foster the child's relationship with the noncustodial parent if the move is allowed; (8) the effect of the move on extended family relationships here and in the new location; (9) if the child is of age, his or her preference; (10) whether the child is entering his or her senior year in high school at which point he or she should generally not be moved until graduation without his or her consent; (11) whether the noncustodial parent has the ability to relocate; (12) any other factor bearing on the child's interest.

*Baures,* 167 N.J. at 116-17. *Baures v. Lewis* also set forth a two-pronged burden-of-proof analysis, which consists of proving a good-faith reason for the move and that the child would not suffer from the move. *Baures,* 167 N.J. at 118. Once the two-pronged burden has been satisfied, the "burden of going forward devolves upon the noncustodial parent who must produce evidence oppos-

ing the move as either not in good faith or inimical to the child's interest." *Id.*

Turning to Arkansas cases, since *Staab v. Hurst* was decided in 1994, the Arkansas Supreme Court has not been called upon to consider the accuracy of the Arkansas Court of Appeal's adoption of the criteria established in *Staab*. However, this court has reviewed two cases since *Staab* in which relocation was a factor in a change-of-custody dispute. *Lewellyn v. Lewellyn*, 351 Ark. 346, 93 S.W.3d 691 (2002); *Jones v. Jones*, 326 Ark. 481, 931 S.W.2d 767 (1996).

The Arkansas Court of Appeals has decided numerous cases involving relocation of a custodial parent where he or she wishes to relocate with the children. In 1994, the court of appeals decided *Staab v. Horst,* 44 Ark. App. 128, 868 S.W.2d 517 (1994), and relied on the 1976 New Jersey case of *D'Onofrio v. D'Onofrio, supra; Cooper, supra.* Based on *D'Onofrio* and *Cooper*, the court of appeals adopted five factors to be utilized in relocation cases:

> *D'Onofrio* also attempted to articulate a framework by which courts should be guided in deciding relocation disputes. It provides that, where the custodial parent seeks to move with the parties' children to a place so geographically distant as to render weekly visitation impossible or impractical, and where the non-custodial parent objects to the move, the custodial parent should have the burden of first demonstrating that some real advantage will result to the new family unit from the move. *D'Onofrio* further provides that, where the custodial parent meets this threshold burden, the court should then consider a number of factors in order to accommodate the compelling interests of all the family members. These factors should include: (1) the prospective advantages of the move in terms of its likely capacity for improving the general quality of life for both the custodial parent and the children; (2) the integrity of the motives of the custodial parent in seeking the move in order to determine whether the removal is inspired primarily by the desire to defeat or frustrate visitation by the non-custodial parent; (3) whether the custodial parent is likely to comply with substitute visitation orders; (4) the integrity of the non-custodial parent's motives in resisting the removal; and (5) whether, if removal is allowed, there will be a realistic opportunity for visitation in lieu of the weekly pattern which can provide an adequate basis for preserving and fostering

the parent relationship with the non-custodial parent. See also *Cooper v. Cooper*, 99 N.J. 42, 491 A.2d 606 (1984).

*Staab v. Hurst*, 44 Ark. App. at 134, 868 S.W.2d at 520. The court of appeals further required the custodial parent to meet the threshold burden to prove some "real advantage" to the child and himself or herself in the move before applying the five factors. *Hickmon v. Hickmon, supra.*

Consequently, in a relocation case, the court of appeals has removed the burden from the noncustodial parent to prove that there has been a material change in circumstance justifying a change in custody. *Hickmon, supra.* Instead, the court of appeals places the burden of proof on the custodial parent to prove that he or she should be allowed to retain custody in light of the desired relocation. *Hickmon, supra.* In essence, the court of appeals has set a presumption that the relocation of the custodial parent and the child is detrimental to the best interests of the child. However, this is contrary to this court's requirement that a change of custody has a more rigorous requirement than the initial custody determination. *Lloyd v. Butts*, 343 Ark. 620, 37 S.W.3d (2001). Nevertheless, the court of appeals has held that *Staab* only applies to the evaluation of a petition to relocate, where the best interest of the family unit is at issue. *Riley v. Riley*, 45 Ark. App. 165, 873 S.W.2d 564 (1994).

Before the court of appeals decided *Staab*, this court heard *Ising v. Ward*, 231 Ark. 767, 332 S.W.2d 495 (1960). In that case, Ms. Ising was refused consent to relocate from Fort Smith, Arkansas, to Oklahoma with her child. In reversing the trial court, this court held:

> At the outset we recognize, as did the chancellor, that the parent having custody of a child is ordinarily entitled to move to another state and to take the child to the new domicile. As we said in a similar case: "We do not think that the Chancellor erred in refusing to require appellee [the mother] to remain somewhat a prisoner in Arkansas because of the unfortunate divorce proceeding." *Antonacci v. Antonacci*, 222 Ark. 881, 263 S.W.2d 484; *see also Thompson v. Thompson*, 213 Ark. 595, 212 S.W.2d 8; *Nutt v. Nutt*, 214 Ark. 24, 214 S.W.2d 366; *Langston v. Horton*, 229 Ark. 708, 317 S.W.2d 821. In our earlier cases the objection to an application of this kind has usually sprung from the loss of visitation rights that the protesting parent would suffer upon the

child's departure. That point is not involved here, for the proposed home in Oklahoma is not so far from Fort Smith as to interfere with the appellee's decreed right to have his daughter with him every other weekend.

231 Ark. 768, 332 S.W.2d at 495 (1960). The custodial parent is ordinarily authorized to relocate to another state and take the child with him or her. *Walter v. Holman*, 245 Ark. 173, 431, S.W.2d 468 (1968). The *Walter* court concluded that it "is a matter of common knowledge that at least one parent must necessarily forfeit some individual rights to the constant companionship of minor children when a divorce decree is granted." *Id.* at 178, 431 S.W.2d at 471. Since *Staab*, this court has held that it was not a material change in circumstance to move from Conway, Arkansas, to Little Rock, Arkansas, nor was the remarriage of one of the parties. *Jones v. Jones, supra.* Therefore, this court has neither adopted nor applied the *Staab* criteria, and, likewise, we decline to do so here.

Historically, this court has recognized the right of the custodial parent to relocate and to relocate with his or her children, and we adhere to that determination in this case. Today, we hold that relocation alone is not a material change in circumstance. We pronounce a presumption in favor of relocation for custodial parents with primary custody. The noncustodial parent should have the burden to rebut the relocation presumption. The custodial parent no longer has the obligation to prove a real advantage to herself or himself and to the children in relocating.

The polestar in making a relocation determination is the best interest of the child, and the court should take into consideration the following matters: (1) the reason for the relocation; (2) the educational, health, and leisure opportunities available in the location in which the custodial parent and children will relocate; (3) visitation and communication schedule for the noncustodial parent; (4) the effect of the move on the extended family relationships in the location in which the custodial parent and children will relocate, as well as Arkansas; and, (5) preference of the child, including the age, maturity, and the reasons given by the child as to his or her preference.

In this case, appellant Hollandsworth was granted primary custody in the divorce decree. Appellee only had extended

visitation until the eldest child entered school; and, at that time, appellee would only have visitation according to the divorce decree. Appellant is relocating to Clarksville, Tennessee, only five hundred miles away from the noncustodial parent. Therefore, while not possessing an identical visitation schedule, the appellee/noncustodial parent could have adequate visitation to maintain a respectable relationship with the parties' minor children.

■ Here, there was no testimony provided that the move would be detrimental to the children. In fact, appellant's grandfather testified that the relocation would not interfere with the relationship he had formed with the children in Northwest Arkansas. Further, the children would benefit from a two-parent home where the appellant would be a full-time mother. Even if appellant were to obtain part-time employment, she testified that she would still provide daily care for the children.

■ The reason appellant desires to relocate is valid. After divorcing the appellee, appellant remarried an individual who resides in Tennessee. It is only common and normal for a wife to reside with her husband. Further, the children will benefit from a relationship with the children's half-sibling. The motives for the relocation are genuine. Additionally, all indications are that there would be no detrimental variance in the educational, health, and leisure opportunities for the children in Tennessee as opposed to Northwest Arkansas.

■ We are not unmindful of the fact that the children are surrounded by extended family members in Northwest Arkansas, a point relied upon and urged by appellee. Appellee testified, however, that he was living with his parents and that, although he works at night and sleeps during the daytime, his mother (the children's paternal grandmother) would be their caregiver. While those are valid considerations, we nevertheless hold that appellee has simply failed to establish a material change in circumstance and has failed to meet his burden of rebutting a presumption in favor of relocation.

Appellee will be able to sustain a visitation and communication schedule with the parties' children. The trial court set forth a visitation schedule suitable for a noncustodial parent; therefore, there is already a guideline set for visitation. Appellant testified that she would be willing to abide by such visitation schedules.

The trial court found that both the appellant and appellee would continue to support the children's relationship with the noncustodial parent.

In conclusion, we reverse and remand to the trial court to enter an order consistent with this opinion.

Reversed and remanded.