Miranda WALRACK *v.* Stacy A. EDGE

CA 03-1159                                                190 S.W.3d 281

Court of Appeals of Arkansas
Division IV
Opinion delivered September 1, 2004

*Tripcony Law Firm*, by: *James L. Tripcony*, for appellant.

*Hughes & Hughes, P.A.*, by: *Thomas M. Hughes*, for appellee.

JOHN F. STROUD, Chief Judge. Appellant, Miranda Walrack, and appellee, Stacy Edge, were divorced in May 2001. The parties were granted joint custody of their minor son, Cody, born

April 4, 1997, with Miranda receiving primary physical custody. In March 2002, Miranda, who had remarried, filed a motion requesting permission for her to relocate from Hazen, Arkansas, to Marion, Illinois, with Cody, a distance of approximately 300 miles. Stacy responded with a petition to change custody of Cody solely to him. A hearing was held on Miranda's motion on May 27, 2003, and by order filed June 12, 2003, the trial judge denied Miranda's motion to relocate with Cody, finding that Miranda had not satisfactorily demonstrated "a real advantage for her or the minor child to relocate . . . , that the relocation would be harmful or injurious to the child and it would be in the best interest of the child" to remain in Arkansas. After the trial judge announced his decision denying Miranda's motion, Stacy withdrew his petition for change of custody, but the order stated that if Miranda were successful in appealing the trial court's decision, the trial court would then conduct proceedings "to determine whether the request to relocate and the granting of such request constitutes a material change of circumstances sufficient to reconsider the issue of modifying primary custody and placing same with [Stacy] based on the best interests of the parties' minor child."

On June 5, 2003, the Arkansas Supreme Court handed down its decision in *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003), which specifically addressed the issue of a custodial parent's right to relocate to another state with the children, holding that there is a presumption in favor of relocation for custodial parents and that it is the noncustodial parent's burden to rebut that presumption. On June 23, 2003, Miranda petitioned the trial court to reconsider its decision in light of the supreme court's *Hollandsworth* decision; on July 15, 2003, the trial court denied her request without a hearing, finding that Stacy had overcome the presumption in favor of relocation, specifically because Stacy had "significant visitation beyond standard visitation [and that] evidences that [Stacy] had a stronger bond than most; that all of [Cody's] family resides in Hazen, Arkansas, including a grandfather who is almost like a father to [Cody]; and that [Cody] has no other family in Illinois." The trial judge also stated that he had given "considerable weight to the short duration of [Miranda's] current marriage" and determined that there must be a "longer history of relationship" before allowing Cody to relocate from an area in which other family members lived to an area where no family members other than his mother resided.

Miranda now appeals to this court, arguing that the trial court erred in finding that Stacy overcame the presumption in

favor of allowing a custodial parent to relocate with the child. We hold that the trial court was clearly erroneous in denying Miranda's request to relocate to Illinois; therefore, we reverse and remand.

In *Hollandsworth v. Knyzewski, supra,* our supreme court set forth the standard of review to be used in custodial-parent-relocation cases:

> This court has traditionally reviewed matters that sounded in equity *de novo* on the record with respect to fact questions and legal questions. We have stated repeatedly that we would not reverse a finding by a trial court in an equity case unless it was clearly erroneous. We have further stated that a finding of fact by a trial court sitting in an equity case is clearly erroneous when, despite supporting evidence in the record, the appellate court viewing all of the evidence is left with a definite and firm conviction that a mistake has been committed. These common-law principles continue to pertain after the adoption of Amendment 80 to the Arkansas Constitution, which became effective July 1, 2001.

353 Ark. at 475, 109 S.W.3d at 656–57 (internal citations omitted).

At the May 27, 2003 hearing, Miranda testified that she had been married for over one year to Michael Walrack and that they had a twenty-one-month-old child, Alex, who was Cody's half-brother. She stated that she lived in Hazen, Arkansas, with her parents and worked at Wal-Mart in Bryant, while her husband resided in Marion, Illinois, the town in which he grew up, and worked in Carbondale, Illinois. She said that her husband's mother and stepfather lived in Marion as well, but that Cody did not have any family in that area. She testified that because of this arrangement, she normally only got to see her husband on the weekends, and that on average, she only got to spend about ten hours per week with him because of his work schedule.

Miranda said that she had recently been promoted to Management Trainee with Wal-Mart, which required her to work forty-eight hours per week and had doubled her salary to $30,000. One of the stipulations of being in the management program was that she would have to relocate, and she had been told by her supervisor that it would be to southern Illinois, northwestern Kentucky, or southeast Missouri, which were all in the vicinity of Marion, Illinois. She stated that once she completed her training, her salary would be $32,500.

Miranda described the house that she and her husband owned in Marion, which had three bedrooms, two bathrooms, and

a fenced-in yard. She said that in her parents' home in Hazen, neither child had his own room, and that she shared a bedroom with her younger son while Cody slept with her father.

Miranda stated that the school in which Cody would be enrolled was four blocks from their home, and she believed that it would be a better school than the one in Hazen. She also said that she had been admitted to John A. Logan College for the fall semester, and she intended to take classes there and then transfer her hours to Southern Illinois University. However, she said that she could not take classes at Logan College from Arkansas because she had to be an Illinois resident. She said that tuition at the colleges in Arkansas was more expensive than it was in Illinois, and if she went to college in Arkansas, she would have to pay for 100% of it, whereas if she went to college in Illinois, she could go to school on grants due to her husband's status as a Persian Gulf veteran.

Miranda said that the only reason she was still in Hazen was because of the court-ordered restrictions, and she opined that allowing her to move with Cody to Illinois would improve life for not only Cody but her entire family. She said that allowing the move would give Cody a set schedule and would give him some sense of normalcy, which was not present in his life right now. She also noted that Cody's half-brother adored him and that Cody needed to be in a family unit.

Miranda told the court that she wanted Stacy to be a part of Cody's life, that she had no desire to frustrate his visitation, and that she would be willing to help with the travel expenses for visitation. The only change she wanted to make in the visitation schedule was for Stacy to have Cody six weeks at a time in the summer instead of in two-week intervals, so that Cody would not have to travel as much. Miranda assured the court that she would follow all substituted visitation orders if she were allowed to move to Illinois, and she would make sure that Stacy got to see his son. She stated that she believed that Stacy was opposing her request to move out of spite because he had wanted full custody of Cody during the original divorce proceedings, and it was her belief that he was just trying to control her. She also said that it was her opinion that Stacy did not utilize his time with his son as well as he should; however, she said that she would never downgrade him or talk bad about him because he was Cody's father.

Miranda said that for the last two years or so, her time with Cody had been weekend trips to Illinois and evenings after work.

She said that her husband usually saw Cody one weekend per month when she took him to Illinois, and that they had also spent Christmas vacation in Illinois. She acknowledged that none of her family had been to Illinois yet and that her parents initially did not want Cody to move to Illinois, but that now they wanted him to move. She said that she had never kept Cody from being with his family, but that she did not want to leave him in Arkansas and move to Illinois to be with her husband and other son and just visit Cody, because she did not feel like she should have to choose between her children. She said that Cody and her father were "inseparable," and that her father would find ways to visit in Illinois as often as he could. She said that other than her parents, Stacy's mother and brother, and a few aunts and uncles lived in Prairie County; and that other than her husband's family and her, Cody would have no other relatives in Illinois.

Michael Walrack, Miranda's husband, testified he lived in Marion, Illinois, and that his mother, step-father, and grandparents lived about thirty-five minutes away. He said that he worked two jobs, with his primary job being at Lowe's and a part-time job at Auto Zone to help with the legal bills. He said that he and Miranda had talked about moving to Hazen, but that he could not find comparable employment making the amount of money he made in Illinois. Because of his and Miranda's living arrangements, he had missed much of Alex's first and second years, which he said he regretted. He stated that when Cody was in Illinois, he had his own room, which was decorated in a tractor theme. He said that he usually saw Cody every two weeks, but that sometimes Cody wanted to stay with his grandparents.

Clifford James, Miranda's father, testified that Miranda and Cody had been living with him for about one year, and that Miranda was Cody's primary care giver when she was not working. He said that Cody and his brother were "crazy" about each other, and that Cody seemed to enjoy being a big brother. Mr. James said that he and Cody were very close and that he was protective of him, but that he had no reservation about Michael Walrack being around Cody, and he thought he would be a good influence on Cody. He said that he supported Miranda's desire to move to Illinois because it would be best for Cody. He admitted that he would not get to see Cody as much, but said that would be okay because he was looking out for Cody's interests, not his. He noted that Cody was not doing well in the present arrangement,

and that he would rather give up his relationship with Cody than see him living in his current situation.

Ruth James, Miranda's mother, testified that Miranda usually gave the children their baths, and that she helped Cody with his homework every night. She described Miranda as a loving and caring mother. She said that she supported Miranda's request to relocate even though she would miss Cody, because it was in Cody's best interest to be with his mother and his little brother. She also stated that she believed that Cody would be better off in a school system other than Hazen. Mrs. James noted that she would be able to visit Cody, and that grandparents had to "back off."

Patricia Stricker, a psychotherapist, testified that she had counseled Cody for six sessions. She said that during those sessions, Cody talked about his mother, his baby brother, Mr. Mike, and his grandparents, but that he talked very little about his father. She said that Cody would not answer questions when his father's name was brought up, and she found that unusual.

Stacy did not testify or call any witnesses on his behalf. The trial judge, ruling from the bench, stated that his understanding of the law was that he must first determine whether the relocation of the child would be harmful or injurious to the child, and then there were other factors to be considered. He found that nothing material had changed since the divorce, that separating Cody from his grandfather, father, and all of his family members would be harmful, and he denied Miranda's request to relocate on that basis, adding that he did not believe that it was in Cody's best interest to move to Illinois. Miranda petitioned the trial court to reconsider its ruling in light of the supreme court's decision in *Hollandsworth*; the trial court denied that request without holding a hearing, finding that Stacy had overcome the presumption in favor of relocation set forth in *Hollandsworth*. Miranda now brings this appeal.

On appeal, Miranda contends that *Hollandsworth v. Knyzewski, supra*, is directly on point. We agree. *Hollandsworth* clearly and specifically holds that there is "a presumption in favor of relocation for custodial parents with primary custody. The noncustodial parent should have the burden to rebut the relocation presumption. The custodial parent no longer has the responsibility to prove a real advantage to herself or himself and to the children in relocating." 353 Ark. at 476, 109 S.W.3d at 657. The court

noted that conflicts inevitably arise when the noncustodial parent objects to the custodial parent's relocation with the children. However, citing *Cooper v. Cooper*, 99 N.J. 42, 491 A.2d 606 (1984), the court also noted that nothing prevented a noncustodial parent from leaving the state to seek a different lifestyle after a divorce, although such actions might be disruptive to the noncustodial parent's relationship with his or her children, and stated that the custodial parent had the same right to seek a better lifestyle for herself or himself and the children as did the noncustodial parent.

Our supreme court goes on to discuss several other states' views toward custodial-parent relocation in the *Hollandsworth* decision, as well as older Arkansas case law regarding custodial-parent relocation. In *Ising v. Ward*, 231 Ark. 767, 332 S.W.2d 495 (1960), the supreme court reversed the denial of a custodial mother's request to move with her child from Fort Smith to Oklahoma. In that case, the court recognized a custodial parent's right to ordinarily relocate to another state with the child. The *Hollandsworth* court, quoting *Walter v. Holman*, 245 Ark. 173, 178, 431 S.W.2d 468, 471 (1968), stated that it was "a matter of common knowledge that at least one parent must necessarily forfeit some individual rights to the constant companionship of minor children when a divorce decree is granted." 353 Ark. at 485, 109 S.W.3d at 663. The court held that it had historically recognized the custodial parent's right to relocate with his or her children, and it was adhering to that determination.

The *Hollandsworth* court set forth the following factors to be considered in determining the best interest of the child in the matter of a request for relocation: (1) the reason for the relocation; (2) the educational, health, and leisure opportunities available in the location in which the custodial parent and children will relocate; (3) visitation and communication schedule for the non-custodial parent; (4) the effect of the move on the extended family relationships in the location in which the custodial parent and children will relocate, as well as Arkansas; (5) the preference of the child, including the age, maturity, and the reasons given by the child as to his or her preference. *See also Blivin v. Weber*, 354 Ark. 483, 126 S.W.3d 351 (2003); *Durham v. Durham*, 82 Ark. App. 562, 120 S.W.3d 129 (2003).

Upon applying the law set forth in *Hollandsworth*, we hold that the trial judge clearly erred in denying Miranda's petition to relocate with Cody to Illinois. Miranda's reasons for wanting to

relocate to Illinois were valid; all of the testimony regarding schools indicated that the Illinois school was better than the Hazen school; and Miranda testified that she would be willing to work to ensure that Stacy received his visitation with Cody, even offering to help pay for the travel expenses. Although Cody's extended family lived in Arkansas, his maternal grandparents, the extended family to whom he was closest, testified that they believed that it was in Cody's best interest to allow Miranda to move to Illinois and that they could visit him. Cody did not testify, so the fifth factor is not applicable to this case.

■■ We further hold that the trial judge's ruling that Stacy had rebutted the presumption in favor of allowing Miranda to relocate was also clearly erroneous. Stacy presented no evidence on his behalf in the hearing, and there was absolutely no evidence before the trial court to rebut the presumption in favor of relocation. The trial judge noted that he gave considerable weight to the short duration of Miranda's current marriage and determined that a "longer history of relationship [was] needed in order to determine its likelihood of success or failure before authorizing relocation of the minor child from an area in which other family members reside to an area in which no family members other than his mother reside." However, this is not a proper factor for consideration under *Hollandsworth,* and in fact, the marriage in *Hollandsworth* was of much shorter duration that the one in the present case. These cases will almost always arise soon after a remarriage due to the strong and logical desire of a newlywed to reside with his or her new spouse.

■ We also note that the order denying Miranda's request to relocate provided that Stacy withdrew his petition for change of custody on the basis that if Miranda was successful on appeal, she would not be allowed to relocate outside of Hazen until the trial court considered whether the granting of her request to relocate constituted a material change of circumstances sufficient to reconsider the issue of the primary physical custody of Cody. However, *Hollandsworth* also answers the question of whether the grant of Miranda's request to relocate constitutes a material change of circumstances sufficient to allow the trial court to reconsider a change of Cody's primary custody to Stacy by specifically holding that the "relocation of a primary custodian and his or her children alone is not a material change in circumstance." 353 Ark. at 476,

109 S.W.3d at 657. Therefore, we reverse and remand for entry of an order allowing Miranda to immediately move to Illinois with Cody.

Reversed and remanded.

NEAL and CRABTREE, JJ., agree.