

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-13-366

| | |
|---|---|
| WYATT LEE YOUNG<br>APPELLANT | Opinion Delivered December 4, 2013 |
| V. | APPEAL FROM THE MADISON COUNTY CIRCUIT COURT<br>[NO. DR 2010-131-5] |
| BRIDGETT ANN YOUNG<br>APPELLEE | HONORABLE BETH STOREY BRYAN, JUDGE |
| | AFFIRMED |

**ROBIN F. WYNNE, Judge**

The parties are divorced and have one child together, who was two months old when the divorce decree was entered on January 3, 2011. Wyatt Young appeals from the circuit court's order denying his motion for change of custody and granting appellee Bridgett Young's (now Bevans) petition for relocation. Wyatt argues that the trial court's decision to permit relocation was clearly erroneous because it did not fully consider the factors set forth in *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003); he contends that he overcame the presumption in favor of relocation. We affirm.

The parties married on April 5, 2010, and separated on May 22, 2010. At the time of their divorce in December 2010, the parties agreed that Bridgett would have primary custody of their son, subject to Wyatt's reasonable visitation. In August 2012, Bridgett filed a petition for relocation, stating that she had remarried and that her husband was in the

Marine Corps and stationed in North Carolina. She stated that she desired to move to North Carolina to live with her husband and had been offered a job there. Wyatt responded and included a motion for change of custody. He alleged that Bridgett had engaged in a "systemic scheme to alienate the minor child since the time of the child's birth." Wyatt outlined facts that he asserted constituted a material change in circumstances warranting a change in custody.

At the hearing on December 13, 2012, Bridgett testified that she was nineteen years old and lived at her parents' house in Huntsville. She testified that her son was healthy and doing well. She did not work, but was a full-time student at North Arkansas Community College and hoped to transfer to Jacksonville, North Carolina, to finish the year. Bridgett stated that at the end of the next semester she would be a phlebotomy technician and eventually she wanted to be a medical-laboratory technician.

Bridgett testified that she was married on June 25, 2012, to Jacob Bevans, a lance corporal in the Marine Corps who was stationed in Jacksonville, North Carolina. She testified that she and her husband had not lived together. She stated that, if she were allowed to relocate, they would be living in a duplex out in the country with a nice yard. There is a daycare available for military families at the school she would be attending. According to Bridgett, Jacksonville has a population of around 70,000 and all of the recreational and other facilities available in Arkansas. If she relocated, she stated that she would like her son and Wyatt to communicate through Skype.

She testified that after she told Wyatt about her marriage and desire to relocate, things became more tense between them. Nonetheless, he continued to exercise visitation, and she

SLIP OPINION

stated that she had allowed him more visitation than required by the court's order—three hours on Wednesdays instead of the required two hours. That changed when the child's nap schedule changed, and Bridgett no longer allowed Wyatt to pick him up an hour early on Wednesdays. She acknowledged that Wyatt was a good father and stated that she wanted him and his family to continue to have a close relationship with the child.

Wyatt testified that he was twenty-two years old and worked as a contract logger for his father's company. He had lived with his parents his whole life. Wyatt testified regarding his involvement in his son's life and the activities they did together. Wyatt testified that he was concerned that if Bridgett moved to North Carolina that he would be prevented from getting information about his son or that she would try to cut his son out of his life.

Both of Wyatt's parents testified regarding their family's close relationship with Wyatt's son and the activities that they did together during Wyatt's visitations every Wednesday evening and every other weekend.

In closing arguments, Wyatt conceded that he had not shown a material change in circumstances (thus abandoning his motion for change of custody) and asked that Bridgett not be allowed to relocate to North Carolina. At the conclusion of the hearing, the trial court specifically addressed the *Hollandsworth* factors and found that it was in the child's best interest to relocate with his mother. The court's order was entered on January 29, 2013, and it provided a new visitation schedule, which included visitation via Skype every evening at 7:00 for the party who did not have the child, and stated that "transportation and/or expenses" would by decided by and split equally between the parties. This appeal followed.

SLIP OPINION

We review equity cases de novo, but we will reverse only if the trial court's findings were clearly erroneous or clearly against the preponderance of the evidence. *Bishop v. Singletary*, 2013 Ark. App. 394, at 3, ___ S.W.3d ___, ___ (citing *Ford v. Ford*, 347 Ark. 485, 65 S.W.3d 432 (2002)). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Id*. We give due deference to the trial judge's superior position to determine the credibility of the witnesses and the weight to be given their testimony. *Id.*

In *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003), our supreme court set forth a presumption in favor of relocation for a custodial parent with primary custody, with the noncustodial parent having the burden of rebutting the presumption. The court stated that the custodial parent no longer has the obligation to prove a real advantage in relocating. *Id*. The court further stated:

> The polestar in making a relocation determination is the best interest of the child, and the court should take into consideration the following matters: (1) the reason for the relocation; (2) the educational, health, and leisure opportunities available in the location in which the custodial parent and children will relocate; (3) visitation and communication schedule for the noncustodial parent; (4) the effect of the move on the extended family relationships in the location in which the custodial parent and children will relocate, as well as Arkansas; and, (5) preference of the child, including the age, maturity, and the reasons given by the child as to his or her preference.

*Id*. at 485, 109 S.W.3d at 663–64. The court went on to state that the reason the appellant desired to relocate—marrying someone living in another state—was valid, noting that "[i]t is only common and normal for a wife to reside with her husband." *Id*. at 486, 109 S.W.3d at 664.

Wyatt argues that the trial court's decision to permit relocation was clearly erroneous because it did not fully consider the *Hollandsworth* factors, and he contends that he overcame

the presumption in favor of relocation. He points to the facts that Bridgett has no family support in North Carolina, she got married to her new husband quickly and had never lived with him, her husband would likely be deployed in the near future, and neither party earns much money to pay for travel. He concludes that "[i]f this decision stands then a custodial parent will be allowed to relocate for just about any reason whatsoever (or no reason at all) and there will be nothing that the non-custodial parent can do about it."

In this case, the circuit court specifically considered all these factors, and found, based on all the evidence, that relocation with his mother was in the best interest of the child. Considering the deference accorded to the circuit court, due to its superior position to judge the credibility of the witnesses, we hold that the circuit court did not clearly err in finding that Wyatt failed to rebut the *Hollandsworth* presumption.

Affirmed.

PITTMAN and HARRISON, JJ., agree.

*Byars, Hickey & Hall, PLLC*, by: *Kevin L. Hickey*, for appellant.

*Snively Law Firm*, by: *Tim Snively*, for appellee.