Jamai Weber BLIVIN *v.* Blake H. WEBER

02-1189                                             126 S.W.3d 351

Supreme Court of Arkansas
Opinion delivered October 23, 2003

484

*Wilson, Engstrom, Corum & Coulter*, by: *Stephen Engstrom*, for appellant.

*Dodds, Kidd & Ryan*, by: *Judson Kidd* and *Stephanie Chamberlin*, for appellee.

ROBERT L. BROWN, Justice. Appellant, Jamai Weber Blivin, appeals from the circuit court's denial of her motion to modify visitation and custody in which she sought permission to relocate from Arkansas to North Carolina with her children to join her new husband. She asserts that the circuit court erred in applying the wrong legal standard in refusing to allow her to relocate, which actually elevated her burden of proof to a higher standard than required. Because we recently announced a presumption in favor of relocation for a custodial parent in *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003),[1] we reverse and remand the case for the circuit court to consider the matter in light of that decision.

Jamai and appellee Blake Weber were married on December 8, 1990, and were divorced on February 28, 2001. Three children were born of the marriage, and at the time of the divorce, their ages were Jessica (age two), Hunter (age six), and Paul (age seven). The divorce decree provided that the parties would share joint legal custody of the children, but that Jamai would have primary physical custody. The custody provision further stated that "neither party shall remove the minor children from the State of Arkansas on a permanent basis without prior court approval."

Sometime around March 11, 2001, Jamai met David Blivin at a basketball tournament in Atlanta, Georgia, and on January 19, 2002, they were married. Eight days before their marriage, David Blivin was divorced. He has three children from his previous marriage: Christopher (age thirteen) and twins Matthew and Millicent (age five). David Blivin is a venture capitalist who lives in the Raleigh–Durham area, where he and Jamai Blivin purchased a home together.

On February 28, 2002, Jamai Blivin filed a motion to modify visitation and custody. In her motion, she stated that she had recently married David Blivin, a resident of North Carolina, and she sought "permission to change the children's primary residence from Arkansas to North Carolina and approval of a liberal and specified visitation schedule for [Mr. Weber] which essentially

---

[1] This *Hollandsworth* decision followed a grant of review of the *Hollandsworth* decision handed down by the court of appeals in *Hollandsworth v. Knyzewski*, 78 Ark. App. 190, 79 S.W.3d 856 (2002). We reversed the decision of the circuit court, as had the court of appeals, but for different reasons, using a different standard.

provides [him] with about the same amount of time with the children each year."

Blake Weber responded to the motion and countermotioned for a change of custody. He said that "it would be in the minor children['s] best interest to remain in the State of Arkansas in the physical custody of the Defendant if [Jamai Blivin] chooses to move to North Carolina." A three-day hearing was held on the motion and countermotion at which time both parties presented testimony in support of their respective positions. Jamai Blivin testified that although she had been working full-time as a stockbroker prior to her divorce, she had since reduced her workload to part-time, which had decreased her salary. She testified that she was extremely involved in her children's lives and stated that upon her relocation to North Carolina, she did not plan to work and would be a "stay-at-home mom."

With regard to schooling for the children, Jamai Blivin testified that the schools in Durham were "state-of-the-art" and that she and her husband had selected their new home based on the school her children would attend. She added that the school operates on a year-round schedule, which she chose because of the opportunities it would permit for their father's visitation. She then presented a proposed visitation schedule, which she claimed would give Blake Weber 123 days with the children in Little Rock, which was a slight reduction from his current 137 days of visitation. Several witnesses testified that Jamai Blivin was a good mother and that she always had her children's interests at heart.

Blake Weber, who is a dentist in Little Rock with a successful practice, also had witnesses testify on his behalf. They stated that he was a good father who enjoyed spending time with his children. Blake Weber testified himself and stated that he believed that the children were better off staying in Arkansas. He was concerned that should the children attend a year-round school, they would "miss huge chunks of participation in [sporting] activities." He further voiced concerns about year-round schooling in that every time they would have a break from school, they would be taken away from their friends and their activities whether in Little Rock or North Carolina. He also testified that his parents had been a great influence on the children. Finally, he testified that he would work a portion of each Friday and would reduce his work hours on other days in order to spend more time with the children after school.

On July 17, 2002, the circuit court entered its order and made the following findings:

> 15. The Court concludes that both parents are good parents, love their children very much, are able to provide the necessities of life and much more, and either are suitable to have custody of the children.

> 16. The Court is called upon to decide whether the plaintiff may relocate the children in North Carolina. The Court first looks to the law of relocation in Arkansas and finds that Staab v. Hurst, 44 Ark. App. 128, 868 S.W.2d 517 (1994) is still the controlling case in this area, even though a recent [court of appeals'] case styled Hollandsworth v. Knyzewski (CA 01-982) handed down July 3, 2002, attempts to refine this law. The Court first has to determine whether the plaintiff has met her burden of demonstrating that some real advantage will result to the new family unit from the move.

> . . . .

> 20. In the present case, this Court cannot find that there will be no real advantage to the family unit relocating to North Carolina. The precedent of Hollandsworth is clear that only a minimum of evidence is required to meet this burden.

> . . . .

> 22. In any event, this Court will follow the majority decision in Hollandsworth and find that the plaintiff has met her burden that "some real advantage will result to the new family unit from the move."

> . . . .

> 24. . . . The Court agrees that the general quality of life will improve for the custodial parent by moving to North Carolina since she would now be married, would no longer have the burden of providing income for the family, and would be a stay at home mom. . . .

25. The Court cannot find that the move would improve the general quality of life for the children as both the home in North Carolina and Arkansas present a quality of life that will allow the children to succeed and prosper.

26. . . . The Court cannot find any sinister motive in the plaintiff in seeking the move.

27. . . . The Court again is convinced the plaintiff would comply with any substitute visitation orders that this Court orders.

28. . . . The Court finds that the defendant is sincerely resisting the removal. His motives are valid.

. . . .

32. The Court finds that the visitation schedule set forth by the plaintiff would provide a realistic opportunity for visitation in lieu of the weekly pattern that the defendant now enjoys. However, the Court is not convinced that it would provide an adequate basis for preserving and fostering the parent relationship with the non-custodial parent particularly since the children are accustomed to visiting their father several times per week. . . .

. . . .

33. . . . In addition to the five (5) <u>Staab</u> criteria, the Court believes that another factor should be considered, which is the role of the extended family of these children.[2] . . . The paternal grand-parents have been very active in the children's lives and there was no evidence to suggest that the children do not love and enjoy seeing their grandparents on a regular basis. [Footnote added.]

---

[2] The five *Staab* criteria are: (1) the prospective advantages of the move in terms of its likely capacity for improving the general quality of life for both the custodial parent and the children; (2) the integrity of the motives of the custodial parent in seeking the move in order to determine whether the removal is inspired primarily by the desire to defeat or frustrate visitation by the non-custodial parent; (3) whether the custodial parent is likely to comply with substitute visitation orders; (4) the integrity of the non-custodial parent's motives in resisting the removal; and (5) whether, if removal is allowed, there will be a realistic opportunity for visitation in lieu of the weekly pattern which can provide an adequate basis for preserving and fostering the parent relationship with the non-custodial parent. *See Staab v. Hurst*, 44 Ark. App. 128, 868 S.W.2d 517 (1994).

34. . . . The Court similarly must consider that the new stepfather has three (3) children from a previous marriage who visit with him almost half the time, and purportedly enjoy visiting with the three (3) Weber children.

35. . . . The Court has concerns about [the plaintiff's] representation to become a stay at home mom since she has applied for securities licenses in North Carolina, Missouri, Georgia and Alabama. . . . The Court believes that it is more likely that she will utilize the licenses at some point in the future while attempting to juggle her responsibilities as the custodial parent.

. . . .

38. ˙The Court has considered the arguments of counsel and the evidence presented as well as the various factors set forth in Staab, and concludes that it is not in the best interest of the minor children that they be allowed to relocate to North Carolina. The plaintiff's petition to relocate is denied. The children have a stable life in Little Rock, and had both parents living four blocks from each other. They have friends, good schools, extended family and all the comforts available. The Court concludes that it is more important for the children to have their father nearby on a daily basis, than to have the possibility of a stay at home mom and a two-parent household with a stepfather who travels on business extensively. If the plaintiff desires to move to North Carolina, custody of the three (3) children shall be changed to the defendant. If the plaintiff elects to remain in Arkansas, then she shall retain the current custodial relationship as is set forth in the divorce decree.

Following the circuit court's order, Jamai Blivin elected to stay in Little Rock pending this appeal.

Jamai Blivin urges as her primary point on appeal that the circuit court created a new and more onerous burden of proof in her relocation case. In doing so, she contends that the circuit court nullified its finding that there was some real advantage to the family's relocation to North Carolina when it applied the *Staab* framework and saddled her with a heightened burden of proof. We agree but note that the circuit court did not have the benefit of this court's decision in *Hollandsworth v. Knyzewski, supra,* when it made its decision.

■ In *Hollandsworth*, this court set out its standard of review for cases sounding in equity:

> This court has traditionally reviewed matters that sounded in equity *de novo* on the record with respect to fact questions and legal questions. We have stated repeatedly that we would not reverse a finding by a trial court in an equity case unless it was clearly erroneous. We have further stated that a finding of fact by a trial court sitting in an equity case is clearly erroneous when, despite supporting evidence in the record, the appellate court viewing all of the evidence is left with a definite and firm conviction that a mistake has been committed. These common law principles continue to pertain after the adoption of Amendment 80 to the Arkansas Constitution, which became effective July 1, 2001.

353 Ark. at 475, 109 S.W.3d at 656–57 (internal citations omitted).

■■ Although it is not discussed by the parties in their briefs, because the briefs were filed before our *Hollandsworth* decision, *Hollandsworth* is the seminal case in Arkansas and deals with a custodial parent's relocation to another state. In *Hollandsworth* we said:

> [W]e hold that relocation of a primary custodian and his or her children alone is not a material change in circumstance. We pronounce a presumption in favor of relocation for custodial parents with primary custody. The noncustodial parent should have the burden to rebut the relocation presumption. The custodial parent no longer has the responsibility to prove a real advantage to herself or himself and to the children in relocating.

*Id.* at 485, 109 S.W.3d at 657. We further declined to adopt or apply the criteria set forth by our court of appeals in *Staab v. Hurst, supra.* We then set forth the criteria a circuit court should employ when deciding whether a custodial parent should relocate:

> The polestar in making a relocation determination is the best interest of the child, and the court should take into consideration the following matters: (1) the reason for the relocation; (2) the educational, health, and leisure opportunities available in the location in which the custodial parent and children will relocate; (3) visitation and communication schedule for the noncustodial parent; (4) the effect of the move on the extended family relationships in the

location in which the custodial parent and children will relocate, as well as Arkansas; and (5) preference of the child, including the age, maturity, and the reasons given by the child as to his or her preference.

353 Ark. at 485, 109 S.W.3d at 663-64.

In the instant case, Jamai Blivin testified that she wished to relocate due to her marriage to David Blivin and his residence in North Carolina. She testified that she had specifically chosen a school with a year-round schedule in Durham, North Carolina, in order to·facilitate a visitation schedule in which the children would spend substantially the same amount of time with their father as they do now.

The circuit court found that both parents were good and fit parents. There was no testimony demonstrating that the move would adversely affect the children, although Blake Weber voiced some concerns about a year-round school impeding their ability to play sports.[3] In fact, Ms. Blivin testified that she wished to become a stay-at-home mother so that she could attend to her children's needs full-time, although the circuit court had some concerns about this representation. She further testified that although the visitation schedule might require the children to miss a few sports events, they would still be able to participate in sporting activities after their move. Moreover, although Blake Weber would not be able to see the children each week as he was doing under the current visitation schedule, his overall time with the children would not be significantly lessened by virtue of their relocation.

It is clear to us that the circuit court found that both venues for the children, Arkansas and North Carolina, were essentially equal but that the children were better off remaining in Arkansas because· of stability and the added benefit of their relationship with their paternal grandparents. However, our decision in *Hollandsworth* holds that the noncustodial parent, Blake Weber in this case, had the burden of rebutting the presumption in favor of relocation. Accordingly, this court reverses the order of the

---

[3] None of the children testified nor spoke with the trial court about their personal feelings on relocation; nor was any expert testimony presented as to any effect a move would have on them.

circuit court and remands the matter for reconsideration by the circuit court in light of the standard and factors set out in our *Hollandsworth* decision.

We further note that Jamai Blivin has moved this court to strike Blake Weber's supplemental abstract, which includes psychiatric abstracting, due to (1) the time constraints required to check the accuracy of the abstracting, and (2) the potential that she will be taxed for the cost of that abstracting. Two days before this case was submitted for decision, Blake Weber moved to supplement his brief to refer to our *Hollandsworth* decision. Both motions are denied.

Reversed and remanded. Motions denied.

IMBER, J., not participating.