Tori Romeo BENEDIX *v.* Richard Randall ROMEO

CA 05-418                                                  232 S.W.3d 493

Court of Appeals of Arkansas
Opinion delivered March 15, 2006

*Law Office of Odette Woods, PLLC,* by: *Odette B. Woods,* for appellant.

*Helen Rice Grinder*, for appellee.

Sam Bird, Judge. Appellant, Tori Romeo Benedix, mother and custodian of Bailey Michelle Romeo, her eleven-year-old daughter, appeals the trial court's denial of her motion to move out of state with Bailey. Appellee is Bailey's father, Richard Randall Romeo, from whom appellant was divorced in 1996. On appeal, appellant contends (1) that the trial court erred by relying upon and incorporating into its order the report and findings of the attorney/guardian ad litem, even though they were never introduced into evidence and were not part of the record, and (2) that the trial court erred in finding that appellee overcame the presumption in favor of allowing a custodial parent with primary physical custody to relocate with the child. We reverse and remand.

Appellant and appellee were married in 1989; one child, Bailey, was born of the marriage. Appellant, who resides in Conway, Arkansas, is the custodian of Bailey and is married to Danny Benedix.

On March 3, 2004, appellant filed a motion to move with her daughter to appellant's hometown of Harrah, Oklahoma. In the motion, she stated that her plans were not meant to "in any way interfere with [appellee's] relationship with his daughter." Furthermore, she averred that appellee's visitation would continue, with the parties meeting halfway between Conway and Harrah to accomplish the exchange. Appellee subsequently petitioned the court to appoint an attorney/guardian ad litem to represent Bailey, and on June 21, 2004, the court did so.

At the hearing on the motion to move out of Arkansas, appellant testified that her family and her husband's family were from Harrah, Oklahoma. She said that she had lived in Harrah for twenty-nine years before she married appellee, and that all of Bailey's aunts, uncles, cousins, and grandparents on her side lived in Harrah. She testified that Harrah had "schools accredited with the State" and that it was a small town of "about five thousand" near Oklahoma City. She said that it took four-and-a-half hours to drive from Conway, Arkansas, to Harrah, and that Sallisaw, Oklahoma, was the halfway point. She explained that relocation would allow her to "be able to spend time and be part of our family again" and said that she was not related to anyone in Conway. She said that she came to Conway when she married appellee in 1989 and that appellee's parents were in Conway.

Appellant opined that Bailey would benefit by relocating to Oklahoma because she would be able to spend time with extended family. She said that she wanted to see Bailey grow up with her cousins and be able to bond with them. She also said that she had "hoped to move home for years" and that there were recent events in her family suggesting that she needed to move home. She acknowledged that appellee had played an active role in Bailey's life and she testified that her desire to move was not an attempt to thwart appellee's visitation with Bailey. She said that she would comply with "whatever visitation schedule [was] promulgated by the Court" to allow Bailey to have time with appellee and his family in Conway.

Appellant explained that, pursuant to the divorce decree, appellee had visitation with Bailey every other weekend and every Wednesday. She said that appellee took Bailey to school on Thursday mornings and that major holidays were divided. According to the appellant, appellee received visitation for seven weeks during the summer months — from the time school was out until it started again. Appellant said that she was willing to continue the seven weeks of summer visitation, in addition to every other weekend and half of the major holidays. She proposed Sallisaw as the exchange point. She said that she was aware that appellee's father was ill with cancer and she recognized that this could call for additional time to be spent by Bailey with appellee's family.

On cross-examination, appellant said that appellee coached Bailey in extra-curricular activities and that he had done so for six years. According to appellant, this required two or three days a week of contact between appellee and Bailey. She said that appellee attended Bailey's softball games and admitted that Bailey was "very close" to her paternal grandparents. She said that she had not been aware that appellee's father was sick at the time she had filed the motion to move out of state.

Appellant also testified that, before she decided to move, she assessed the schools in Harrah to see how they compared to those in Conway. She conceded that she did not know that Harrah's test scores were lower on a national average than those of schools in Conway. After introducing evidence of statistics showing that test scores in the Conway School District were higher than those in Harrah, appellee's counsel questioned appellant about the difference. Appellant responded that the differences in test results at the

two school districts did not concern her, and she thought that with a smaller school district Bailey would have "more advantages" and "more personalized schooling."

Appellant said that Bailey had two older brothers in Conway and that "she is bonded to them and has had contact with them her whole life." She also said that Bailey did not have contact with her paternal grandparents on a daily basis, but she (Bailey) saw them every other weekend, and Bailey's grandfather picked her up from school sometimes on Wednesdays.

Appellant further testified that she was unemployed, but she felt that it would be "easy" to find a job in Oklahoma. She said that two hair salons had offered her work. She also said that, during visits to Oklahoma, she stayed overnight with her husband's family but also visited her family. After appellee introduced evidence purporting to show that appellant's sister Katherine was a convicted felon, appellant said that she did not know where Katherine was and had not had contact with her for several months. She admitted that her sister had drug problems, and said that she would classify her sister as an "addict," but claimed not to know that her sister was a felon. Appellant said that her sister had moved back in with their mother about two years ago and that she lived there "on and off." She explained that her sister was allowed to stay at their mother's house provided that she was in by ten o'clock, that she held a steady job, and that she was clean from drugs and alcohol. She said that her sister had not followed the rules and was no longer living with their mother. She stated that their mother had custody of Katherine's daughter, Kristyn, and that she wanted to help take care of Kristyn because her mother worked "full time."

Appellant said that she did not anticipate having to work evening hours in Harrah and that she thought she would be able to "pick and choose" what she would do. She said that her husband had two "very good" job offers that would not require her to work as much so she could stay home "much more." She stated that she would work "part time" in Oklahoma. She also said that she thought her two older sons, who lived in the Conway area, would follow her to Oklahoma, but she was not sure of this.

Appellee also testified. He said that he was an agriculture teacher at Conway High School and that he had been there for nineteen years. He also said that he was the "FFA" advisor and that Bailey had participated with him in conventions and leadership camps, and that she went to contests and showed animals at the fair.

Appellee said that he had coached Bailey in almost everything she had done. He said that he coached her in tee ball when she was five years old, and that he had been coaching her ever since. According to appellee, these activities would occur two or three days a week. He said that, when Bailey was in grade school, he would have lunch with her. Appellee also said that Bailey went duck hunting with him, that he watched Bailey dance, and that he had been to Bailey's orchestra activities.

Appellee stated that his parents picked Bailey up from school almost every Wednesday and took her to get something to eat, helped her with homework, and so forth. He said that Bailey was very close to his parents. He also testified that his father had inoperable bladder cancer and heart problems and that Bailey was the only grandchild in the family.

Appellee opined that, if Bailey moved, she would not have the same opportunities to participate in the activities that she enjoyed in Conway. He said that Harrah did not have a school-based orchestra or a middle school volleyball team. He also said that "the every other weekend type deal" was "just not the same." He conceded that Bailey could get into an FFA chapter in Harrah, but explained that most activities took place during the school days or school weeks and that he could not necessarily participate. He said that he thought it would be "very detrimental" if Bailey was not in Conway and able to share these activities with him. He also said that he helped Bailey "to be a good person" and that he provided "stability" for her.

Appellee testified that if Bailey moved, weekend visits would involve about ten hours of travel time for Bailey, to and from Harrah. He said that this would mean that "a lot" of visitation time with Bailey would be "on the road." He expressed concern about the education that Bailey would receive in Harrah, stating that the Harrah School District was below poverty level and that the Conway School District was better as far as test results. He said that his new wife taught at Bob Courtway Middle School in Conway and that she "keeps an eye" on Bailey. He also said that he was concerned about Bailey's aunt being a convicted felon. In appellee's opinion, Bailey and her cousin Kristyn did not get along. Appellee also testified that Bailey's other cousins in Harrah were a few years older than Bailey. Appellee opined that the move was not in Bailey's best interest.

Appellee testified that, according to his internet research, approximately thirty-three percent of Harrah high school gradu-

ates went on to a four-year college, while almost double that number of graduates from Conway High School went on to a four-year college. Appellee also testified that he was not sure how often Bailey saw her older brothers, but that, to the best of his understanding, Bailey's brothers were not planning to move to Oklahoma. He said that he felt that the move to Oklahoma would disrupt his relationship with Bailey very much.

On cross-examination, appellee said that Bailey's lack of opportunity to participate in activities was a big reason for his objection to the move. He said that the opportunities were "not there" for Bailey to receive a better education in Harrah than in Conway. He also said that the situation with Bailey and Kristyn concerned him, explaining that Bailey seemed "agitated" after the two were together. He opined that the impact of the relocation would be that Bailey would not feel as close to his side of the family anymore, and that she would feel "alienated."

According to the attorney/guardian ad litem, Bailey refused to state any preference about the move. Neither the appellant nor the appellee chose to call Bailey as a witness.

Following the hearing, the trial court engaged in a lengthy recitation of the factors upon which it relied in reaching its decision to deny appellant's motion to relocate. During this recitation, the court made the following comments:

> Schools became an issue. There are schools in both locations. One may test a little better than the other, but I'm not necessarily a big believer that, just because one school has five thousand people and the other has four hundred, the five thousand is better. . . . Now, that being said, there are certain things obviously, that bigger school districts can offer that smaller ones can't. . . . Obviously, there are things that [Harrah schools] can't do that . . . a middle school here can do, or a high school can do here, because of population, and taxes, and all the other things we know about. That being said, the school here seems to be a little bit better — marginally better, as far as testing, and marginally better for some things that are offered to her that may or may not be offered in Harrah.
>
> . . . .
>
> I think, in the end . . . Bailey is better suited to stay here, at this point in time. I'm not going to allow . . . the motion to relocate. I thinks she's in a stable situation in the school here. She has family here that

she has [a] relationship with. All the other is prospective; she has something here that . . . by all testimony, has benefitted her. I think, to pull her out of a stable, well-adjusted situation and put her in another situation to be with some folks she may or may not know . . . some of the testimony was [that appellant] has not even had any contact with her own sister since February, didn't even know where she was. Her mom works full time and is not an invalid, takes care of housework, yard work, and those types of things, and is trying to raise another child, another — her grandchild; has a full-time job there.

I just think all things being equal, I don't think they're all equal. I think it's more equal here. I just — I just can't say they're equal. I think we know what we have here; we don't know what they have there. . . .

. . . .

I — I just — I keep going back to Bailey. And, we didn't talk or hear from her, but I have an ad litem's report. I do have both parents here. I just go back to her. She's in volleyball. She could be in volleyball there, but she's made a team here. She has relationships with schoolmates, with family. She's in an orchestra. She may or may not be able to be in a band there. She's in things here that I think would be detrimental if she's pulled out. . . .

On December 17, 2004, the court entered a written order echoing some of its oral recitations, denying appellant's motion to move out of state, and stating in part as follows:

1. That the Court carefully reviewed all exhibits, listened carefully and weighed all testimony, assessed credibility of witnesses, considered Guardian Ad Litem's report and findings, and counsels['] arguments.

2. That the Court considered the *Hollandsworth v. [Knyzewski]* decision, and weighed all factors set forth therein recognizing the presumption in favor of the custodial parent being allowed to move and that the non-custodial parent has the burden of rebutting that presumption and finds that the Defendant met that burden.

3. That the Court finds that all action[s] affect and impact minor children; therefore, weighing all considerations, the Court finds that the move would not be in the best interest of the minor child for the following reasons:

a. The father of the child is and has been since birth of the child very actively involved in her rearing and has had extensive visitation with the child since the divorce proceedings such that it would be impossible based upon the distance for the minor child to enjoy a meaningful visitation schedule with her father;

b. The child is healthy, stable and well adjusted in Arkansas and to pull [her] out of a stable, well adjusted situation to place [sic] in the unknown, recognizing that the Plaintiff testified that she would be living with her mom, who works full time and is raising another grandchild would not be in the child's best interest;[1]

c. The child has extended family in Arkansas that are actively involved in her rearing, to which she is bonded;

d. The school that she would be attending in Arkansas is a better school academically [than] the one she would be attending in Oklahoma based upon testing records[,] and offers a broader range of scholastic events with the child just having made the volleyball team in Arkansas, having worked very hard to obtain and being very proud of making the team; and

e. The Court finds that the Guardian Ad Litem's findings and report should be and are hereby incorporated within this Order as if set out word for word in that the Court finds that the Report was well thought out and grounded in fact.

4. That the Court denies the Defendant's [sic] Motion to Move Out-Of-State with the minor child in that the Court finds that the Plaintiff [sic] met his burden of proving that the move would not be in the best interest of the minor child.

Appellant subsequently filed a motion to reconsider, which was denied.

On appeal, appellant first contends that the trial court committed reversible error by relying upon and incorporating into its order the report of the attorney/guardian ad litem because the

---

[1] From our review of the record, we are unable to find any testimony that appellant would have lived with her mother had she been allowed to move to Oklahoma.

report was never introduced into evidence and is not part of the record. In view of our disposition of this case under appellant's second point, we need not address this point.

For her second point, appellant contends that the trial court erred in finding that appellee overcame the presumption in favor of allowing a custodial parent with primary physical custody to relocate with the child. She offers two arguments to support this point: first, that the trial court erroneously shifted the burden of proof and the burden of persuasion to appellant by requiring her to prove that the move was a real advantage; and second, that based on the five factors set forth in *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003), the evidence presented was insufficient to sustain the court's finding that it was in Bailey's best interest to deny the motion to move out of state.

In *Hollandsworth*, 353 Ark. at 475, 109 S.W.3d at 656–57 (internal citations omitted), our supreme court set forth the following standard of review in equity cases:

> This court has traditionally reviewed matters that sounded in equity *de novo* on the record with respect to fact questions and legal questions. We have stated repeatedly that we would not reverse a finding by a trial court in an equity case unless it was clearly erroneous. We have further stated that a finding of fact by a trial court sitting in an equity case is clearly erroneous when, despite supporting evidence in the record, the appellate court viewing all of the evidence is left with a definite and firm conviction that a mistake has been committed. These common law principles continue to pertain after the adoption of Amendment 80 to the Arkansas Constitution, which became effective July 1, 2001.

The court in *Hollandsworth* pronounced a presumption in favor of relocation for custodial parents with primary custody and stated that the custodial parent no longer has the obligation to prove a real advantage to herself or himself and to the children in relocating. *See Hollandsworth, supra.* The court further held that the noncustodial parent should have the burden to rebut the relocation presumption. *Id.* In addition, the court stated as follows:

> The polestar in making a relocation determination is the best interest of the child, and the court should take into consideration the following matters: (1) the reason for the relocation; (2) the educational, health, and leisure opportunities available in the location in

which the custodial parent and children will relocate; (3) visitation and communication schedule for the noncustodial parent; (4) the effect of the move on the extended family relationships in the location in which the custodial parent and children will relocate, as well as Arkansas; and, (5) preference of the child, including the age, maturity, and the reasons given by the child as to his or her preference.

*Id.* at 485, 109 S.W.3d at 663-64.

Appellant asserts that, although the trial court's order acknowledged a presumption in her favor, the rationale expressed by the trial court in support of its conclusion demonstrates that the court based its ruling on the belief that appellant failed to prove that the move was advantageous to the child. Specifically, appellant refers to the following statement by the court, which was contained in the order:

> The child is healthy, stable and well adjusted in Arkansas and to pull [her] out of a stable, well adjusted situation to place [sic] in the unknown, recognizing that the Plaintiff [appellant] testified that she would be living with her mom, who works full time and is raising another grandchild would not be in the child's best interest[.]

We agree with appellant that, although the trial court's order acknowledged the *Hollandsworth* decision and its presumption in favor of relocation by custodial parents, the court essentially placed the burden on appellant to prove that the move constituted an advantage to the child. The bases of the trial court's decision to deny relocation, as reflected in its oral recitations and its written order, are threefold: (1) the distance from Conway to Harrah renders it impossible for appellee to enjoy meaningful visitation with Bailey; (2) Bailey is actively involved with her father and members of her extended family in Conway, whereas the nature of her relationship with appellant's family in Harrah is uncertain; and (3) the Conway school that Bailey attends represents a known element, whereas the Harrah, Oklahoma, school is an unknown element that "may or may not" offer Bailey the same opportunities that she enjoys in Conway.

The first of these reasons is not supported by the evidence. Appellant and appellee agree that the driving time from Conway to Harrah is approximately four and one-half hours. While this would necessarily eliminate the Wednesday evening visitation presently enjoyed by appellee, as the supreme court

noted in *Hollandsworth, supra,* the "advantages of the move should not be sacrificed solely to maintain the 'same' visitation schedule where a reasonable alternative visitation schedule is available." *Id.* at 481-82, 109 S.W.3d at 661 (quoting *Cooper v. Cooper,* 491 A.2d 606 (N.J. 1984)). We do not consider that the driving distance involved in this case is so formidable as to preclude the court from promulgating a reasonable alternative visitation schedule that would accommodate the interests of the parties and assure that appellee and his family enjoy meaningful visitation with Bailey.

The trial court's second reason for denying relocation is that appellant would be moving Bailey from a healthy, stable environment to which she was adjusted to an environment that is unknown, noting specifically that appellant would be living with her mother and that it would not be in Bailey's interest to be living in the home of appellant's mother who works full time and is raising another grandchild. However, from our review of the record, we are unable to find any testimony that appellant would be living with her mother if allowed to move to Oklahoma. Furthermore, under *Hollandsworth, supra,* it is clearly not appellant's burden in this case to show that the move would provide an equally or more stable situation for the child. *See also Blivin v. Weber,* 354 Ark. 483, 126 S.W.3d 351 (2003) (reversing trial court's denial of appellant's relocation petition where the trial court found that the children were better off remaining in Arkansas because of stability and the added benefit of their relationship with their paternal grandparents).

The same can be said about the trial court's third reason for denying appellant's relocation request. There, the court noted the existence of some disparity between the Conway and Harrah school districts' standardized test scores (*i.e.,* that Conway's test scores were "marginally better"), recognized differences between scholastic opportunities offered at the school districts, and discussed the fact that Bailey had made the volleyball team in Conway. However, under *Hollandsworth, supra,* it was not appellant's obligation to prove that Harrah's schools were equal to or better than the schools in Conway. We do not believe that the supreme court's second factor in *Hollandsworth* (*i.e.,* that in making the relocation decision, the trial court should consider the educational, health, and leisure opportunities available in the location to which the custodial parent and children will relocate) constitutes a directive that any "marginal" differences between the quality of the sending and receiving schools shall constitute a basis for denial

of a custodial parent's relocation request in the absence of evidence that the difference is so significant as to cause the court to conclude that attendance at the new school will be detrimental to the interests of the child. Here, there is no evidence of any likelihood that Bailey, if allowed to attend school in Harrah, would not be among the students who would score high on standardized tests, graduate from high school, and attend a four-year college. Nor is there any evidence from which the court could have concluded that Bailey would be detrimentally affected by any reduced level of scholastic or extra-curricular opportunities. In its recitation, the court stated that such opportunities "may or may not be offered in Harrah," suggesting that the court did not know whether or not Harrah afforded such opportunities.

■ Because the trial court's second and third reasons for denying relocation placed the burden on appellant to show that the move to Oklahoma would be advantageous, which is clearly contrary to the holding in *Hollandsworth* (*i.e.*, that the custodial parent need not prove a real advantage to herself and the children in relocating and that the burden is on the non-custodial parent to rebut the relocation presumption) we hold that the trial court clearly erred in reaching its decision.

We recognize that issues relating to appellee's visitation schedule with Bailey and transportation arrangements must be addressed as a result of this decision. Therefore, we reverse and remand this case to the trial court for further proceedings relating to visitation issues, and for the entry of an appropriate order that is consistent with this opinion.

Reversed and remanded.

HART and NEAL, JJ., agree.