John David RAWE, Jr. *v.* Christa S. RAWE

CA 06-1063                                           264 S.W.3d 549

Court of Appeals of Arkansas
Opinion delivered October 3, 2007

*DeeNita D. Moak*, for appellant.

*Teresa L. Hughes*, for appellee.

DAVID M. GLOVER, Judge. The parties in this case met over the internet. Appellant, David Rawe, is from Arkansas and appellee, Christa Rawe, is from Australia. The parties were married on November 16, 2002, in Arkansas. Christa became pregnant, and she and David traveled to Australia to visit her family. Christa was required to sponsor David so that he could enter Australia because he had a thirteen-year-old felony conviction. Complications in her pregnancy arose while in Australia that prevented Christa from traveling, and the couple's son, Jake, was born in Bendigo, Australia, on October 19, 2003. Jake is a dual citizen of Australia and the United States. The parties returned to Arkansas in February 2004 and moved in with David's parents in El Paso, Arkansas. Christa sought permanent residency status in the United States, which was granted in July 2004.

On July 20, 2004, telling David that she was going shopping, Christa took Jake and never returned home. David searched to no avail for his wife and son, and he then filed for divorce on July 22, 2004. David eventually located Christa and Jake in Australia in September 2004, and he finally was able to talk to Jake in November 2004. After protracted legal proceedings, an Australian court ordered Jake to be returned to the United States; Christa returned with Jake, and David began exercising visitation on December 15, 2005.

At the hearing on January 6, 2006, Christa testified that she left David because of his alcohol problems, his temper, and his violence. Several of her friends, from both Australia and Arkansas, testified regarding David's problem with alcohol and his temper. David, his parents, and two of his friends testified that David was sober and did not have a temper problem. Christa testified that she left in the manner she did because she did not have a place to go where she felt safe in the United States. In defense of her actions in not notifying David of his son's whereabouts for almost two months, she stated that she had removed her son from what she considered to be an unsafe environment. She also testified that she

never intended to make Arkansas her home for the rest of her life; she only filed for permanent residency in the United States to make it easier to travel through customs. Christa requested custody of Jake as well as permission to return to Australia.

The trial court granted the decree of divorce and awarded Christa custody of Jake after the January 6, 2006 hearing, but reserved the issues of relocation, visitation, and child support. On February 6, 2006, an in-chambers conference was held on these outstanding issues. The trial court granted Christa permission to return to Australia with Jake, set forth a visitation schedule, and ordered child support to be paid at a reduced rate of seventy-seven dollars per week beginning February 10, 2006. The trial court also denied Christa's request for child support retroactive to the date David filed for divorce.

The trial court's grant of Christa's petition to relocate with Jake to Australia allowed them to immediately leave for Australia, but the trial court granted David visitation with Jake from 5:00 p.m. on February 6 to 8:00 a.m. on February 8. The trial court also noted that Christa and Jake had been in Arkansas for sixty-two days and that David had received visitation. The trial court ordered that neither party was required to travel for visitation in 2006, but that David could travel to Australia for visitation with Jake as set forth in the visitation order. The terms of visitation, set forth in the supplemental decree to establish visitation and support, provided:

> [Christa] has testified that she will receive two weeks paid vacation a year once she obtains employment in Australia. In 2007 and 2008, [Christa] will come to Arkansas with Jake during her vacation. [Christa] shall give [David] a minimum of sixty (60) days notice of her anticipated arrival and departure dates in Arkansas. [David] will be entitled to visit with Jake a minimum of four hours a day Monday through Thursday with Jake being returned to the care of [Christa] at night. [David] will further be entitled to weekend visitation with Jake from 6:00 p.m. Friday until 6:00 p.m. Sunday along with any other reasonable visitation which can be arranged by mutual agreement between the parties.
>
> In 2007 and 2008, [David] shall travel to Australia to visit with Jake for a minimum of two weeks. [David] shall give [Christa] a minimum of sixty (60) days notice of his anticipated arrival and departure in Euchua. [Christa] [sic] will be entitled to visitation with Jake each day that Jake is not in school from 8:00 a.m. until 6:00 p.m. and for two hours per day when Jake is in school. [David] will

further be entitled to weekend visitation with Jake from 6:00 p.m. Friday until 6:00 p.m. Sunday along with any other reasonable visitation which can be arranged by mutual agreement between the parties. If [David] should stay longer than six (6) weeks in Euchua, Australia, then weekend visitation shall be on alternate weekends after the sixth week.

Beginning in 2009 and continuing in odd numbered years thereafter, [Christa] shall be released from her obligation to travel to Arkansas for two weeks. [David] shall be entitled to annual visitation during Jake's long break from school (Christmas break). In 2009, Jake shall visit with [David] in Arkansas during his six week break from school, with said visitation period to include transportation to and from the United States. Said visitation is conditioned upon [David] having had significant contact with Jake via telephone and/or webcam and [David] having traveled to Australia to visit with Jake for a minimum period of two weeks each year in 2007 and 2008. Further, given the young age of Jake and the length of this visitation period, visitation may be amended upon good showing by [Christa]. If [Christa] is able to arrange to be in Arkansas during all or a portion of the visitation period, [Christa] shall be entitled to telephone contact and "visitation" with Jake. The parties shall arrange visitation to transition Jake into extended time with [David].

Beginning in 2010 and continuing in even numbered years thereafter, the minor child shall be with [Christa] for Christmas Eve and Christmas Day in Australia. The parties shall arrange [David's] visitation with Jake so that [David] receives the maximum number of days of visitation in the United States with Jake during the six week Christmas break, taking into account [Christa's] right to Christmas Eve and Christmas Day visitation with Jake in Australia and travel time to and from the United States.

Beginning in 2009, [Christa] shall bring the minor child to the United States to begin visitation. Unless [Christa] intends to travel to Arkansas with the minor child, visitation exchange shall be in Los Angeles, California, or any other U.S. city designated at the child's site of entry into the U.S. It shall be the responsibility of [David] to return Jake to Melbourne, Australia to the care and custody of [Christa]. If [David] should elect to remain in Australia to visit with Jake, [David] shall be entitled to reasonable visitation with the minor child.

[David] shall be entitled to telephone contact or internet contact via webcam with Jake twice a week, on the holidays of Easter, Memorial Day, July 4th, Labor Day, Thanksgiving Day, Christmas Day, and Jake's birthday. [David] shall contact Jake at 8:30 p.m. Australian time pursuant to the time zone at Jake's home or location. [Christa] shall notify [David] if Jake will not be available at 8:30 p.m. on any of the aforesaid days and arrange a different day and/or time to contact Jake. Within forty-five (45) days of the date of her return to Australia, [Christa] shall establish an internet account and purchase a webcam so as to be able to receive internet contact by webcam from [David].

On appeal, David argues that the trial court erred (1) in awarding Christa custody of Jake; (2) in allowing Christa to relocate to Australia; and (3) in allowing him only limited visitation with Jake. Christa cross-appeals, arguing that the trial court erred in failing to award her child support from the date David filed for divorce until the entry of the divorce decree and by deviating from the family support chart by decreasing David's child-support obligation. We affirm in part and dismiss in part on direct appeal, and we dismiss the cross-appeal.

Cases sounding in equity are reviewed *de novo*, and the appellate court will reverse a trial court's findings only if they were clearly erroneous or clearly against the preponderance of the evidence; a finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Ford v. Ford*, 347 Ark. 485, 65 S.W.3d 432 (2002). Due deference is given to the trial court's superior position to determine witness credibility and the weight to be given their testimony. *Id.* Great deference is given in child-custody cases to the trial court's findings, and the best interest of the child is the polestar in custody cases — all other considerations are secondary. *Id.*

### Custody

David's first point of appeal is that the trial court erred in awarding custody of Jake to Christa. We are unable to reach the merits of this argument because of procedural deficiencies. In his notice of appeal, which was faxed to the courthouse and filed on June 23, 2006, and followed by the hard copy, which was filed on June 26, 2006, David specifically appeals only from the Supplemental Order and the Supplemental Decree to Establish Visitation

and Support, both entered on May 26, 2006. However, the award of Jake's custody to Christa was given in the divorce decree, filed of record on February 6, 2006.

■ Rule 3(e) of the Rules of Appellate Procedure – Civil provides, "A notice of appeal . . . shall specify the party or parties taking the appeal; shall designate the judgment, decree, order or part thereof appealed from; and shall designate the contents of the record on appeal." In *Arkansas Department of Human Services v. Shipman*, 25 Ark. App. 247, 253, 756 S.W.2d 930, 933 (1988), this court held

> that a notice of appeal must be judged by what it recites and not what it was intended to recite. It must state the parties appealing and the order appealed from with specificity, and persons not named as parties to the notice and orders not mentioned in it are not properly before the appellate court.

Here, David made no mention in his notice of appeal of the divorce decree; because the notice of appeal does not designate the divorce decree, in which the trial court granted custody of Jake to Christa, as one of the orders appealed from, this court does not have jurisdiction to entertain David's argument pertaining to custody.

### Relocation

David next argues that the trial court erred in allowing Christa to relocate to Australia with Jake. In support of this argument, he cites *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003). *Hollandsworth* established a presumption in favor of relocation for custodial parents with primary custody, holding that the custodial parent no longer was required to prove a real advantage to them and the children in relocating, and that it was the noncustodial parent's burden to rebut the presumption to relocate. Our supreme court held that the polestar in making relocation decisions was the best interest of the child, and it set forth five matters to be considered in making a relocation decision:

> (1) the reason for the relocation; (2) the educational, health, and leisure opportunities available in the location where the custodial parent and children will relocate; (3) visitation and communication schedule for the noncustodial parent; (4) the effect of the move on the extended family relationships in the location in which the custodial parent and children will relocate, as well as Arkansas; and

(5) preference of the child, including the age, maturity, and the reasons given by the child as to his or her preference.

353 Ark. at 485, 109 S.W.3d at 663-64.

In this case, Christa wanted to relocate because she was an Australian citizen and her only tie to Arkansas was David. She had a job in Australia, and she owned real and personal property in Australia. Christa wanted to return to Australia after her marriage failed. There was no testimony that the educational opportunities were deficient in Australia, and in fact, there was favorable testimony with regard to the health care. Jake was too young to express a preference as to where he lived; for that reason, the fifth factor had no bearing in this case. While it is true that David's extended family, especially his parents, would no longer be able to see Jake on a regular basis, a relationship with grandparents is not sufficient to rebut the presumption to relocate. *See Blivin v. Weber*, 354 Ark. 483, 126 S.W.3d 351 (2003). Christa's parents live several hours from her in Australia, so Jake would have some extended family near him. Applying the *Hollandsworth* factors, we hold that the trial court's decision to allow Christa to relocate to Australia with Jake was not clearly erroneous.

*Visitation*

David's last point of appeal is that the trial court erred in granting him limited visitation. We disagree. We believe that the trial court did the best it could in a very unfortunate situation. In this case, the parties do not merely live in different cities or different states, but rather they live on different continents. Although in his argument David classifies the visitation as "minimal to the point of being negligible," the visitation schedule, set forth above, allows David to have substantial periods of visitation with Jake, both in Australia and in Arkansas. David argues that the visitation schedule is not in Jake's best interest because it provides only limited contact between father and son. However, due to the circumstances of this case, a standard visitation schedule was not feasible and visitation logically was limited to several expanded blocks of time, in addition to telephone and computer visitation. This is not an ideal situation because the parties live on separate continents and the noncustodial parent will necessarily have less

frequent face-to-face visitation as a result of that fact. On these facts, we hold that the trial court's visitation schedule is not clearly erroneous.

### Cross-appeal

Christa has filed a cross-appeal, arguing that the trial court erred in refusing to order David to pay child support retroactively from July 22, 2004, and in deviating in a downward manner from the amount of child support indicated in the Family Support Chart. The cross-appeal is untimely and is dismissed.

David's notice of appeal was first filed by fax on June 23, 2006, and the hard copy notice of appeal was filed three days later, on June 26, 2006, from two orders entered on May 26, 2006. Christa's notice of cross-appeal was not filed until August 28, 2006. Rule 4(a) of the Rules of Appellate Procedure – Civil provides that "a notice of cross-appeal shall be filed within ten (10) days after receipt of the notice of appeal, except that in no event shall a cross-appellant have less than thirty (30) days from the entry of the judgment, decree or order within which to file a notice of cross-appeal." In the June 26 notice of appeal, David's attorney certified that a copy of the notice of appeal was sent via facsimile and/or in the mail to Christa's attorney on June 23, 2006. In the notice of cross-appeal, Christa's attorney stated that notice of David's appeal was not obtained until August 17, 2006, and the notice of cross-appeal was filed on August 28.

In this case, other than Christa's attorney's statement, we have no proof with which to determine whether the cross-appeal was timely. Jurisdiction is a matter this court can raise on its own accord, and we simply cannot determine that we have jurisdiction to hear a cross-appeal based upon a bare assertion by an attorney. The notice of appeal was filed on June 23, 2006. Christa made no showing that she did not receive David's notice of appeal within ten days of filing her cross-appeal. Therefore, we have no proof before us that the notice of appeal was not received until August 17, and we dismiss the cross-appeal as untimely. *See Byndom v. State*, 344 Ark. 391, 39 S.W.3d 781 (2001).

Affirmed in part and dismissed in part on direct appeal; cross-appeal dismissed.

HEFFLEY, J., agrees.

VAUGHT, J., concurs.

LARRY D. VAUGHT, Judge, concurring. Although I agree with the reasoning and results contained in the majority opinion, I write separately to bring attention to an often overlooked rule of appellate procedure. Rule 3(f) of the Arkansas Rules of Appellate Procedure – Civil requires that "[a] copy of the notice of appeal or cross-appeal *shall* be served by counsel for appellant or cross-appellant upon counsel for all other parties *by any form of mail which requires a signed receipt.*" (Emphasis added.) In this case, the litigants — both the appellant and cross-appellant — failed to serve their notices by signed-receipt mail as required by our rules. While their non-compliance does not impact the validity of the appeal, it does complicate our determination of jurisdiction to hear the cross-appeal.

Here, had the notice of appeal been served by signed-receipt mail, we would know definitively when appellee received her copy of the notice. We would then apply Rule 4(a) of the Rules of Appellate Procedure – Civil and require that the notice of cross-appeal be filed within "ten (10) days after receipt of the notice of appeal." Without compliance with Rule 3(f), it is extremely difficult to engage in a jurisdictional determination that is dependent on the "receipt" of a notice. As such, we encourage the bar to take note of this rule, and we use the complications surrounding the cross-appeal in this case as evidence of the rule's utility.